Original
No. 96-455

PETITION OF CATHERINE L. BARNEY

(New Hampshire Retirement System)

May 19, 1998

*Sulloway & Hollis, P.L.L.C.*, of Concord (*James E. Owers* and *Jennifer Shea Moeckel* on the brief, and *Mr. Owers* orally), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Suzan M. Lehmann*, assistant attorney general, on the brief, and *Douglas N. Jones*, assistant attorney general, orally), for the State.

BRODERICK, J. The petitioner, Catherine L. Barney, challenges the ruling of the Board of Trustees (board) of the New Hampshire Retirement System (NHRS) denying her membership reinstatement and leaving her ineligible to apply for disability retirement benefits. We affirm.

In October 1978, the petitioner began working at the New Hampshire State Prison as a corrections officer. Six months later, she enrolled in the NHRS as a Group II member and began making contributions. In November 1985, the petitioner slipped and fell at work, injuring her back and right leg. In late 1986, the State terminated her employment.

Facing financial difficulties, including bills for medical care and car repairs, and a loss of child support for her son, the petitioner withdrew her accumulated retirement contributions, totaling $24,133.37, from the NHRS in 1992. She read and signed an application for return of accumulated contributions, which stated:

> I, Catherine L. Barney . . . hereby make application for the return of the amount of contributions heretofore made by me to the [NHRS], . . . together with the allowable interest credits thereon. In consideration of the return of such amount I hereby waive for myself, my heirs and assigns, and my beneficiary or beneficiaries, all my rights, title and interest in any and all funds under the care and control of the [board].
>
> I understand that if I withdraw my contributions my membership is finally terminated thereby, and that if I thereafter return as an employee covered by the System, I must enter the System with the status of a new entrant with option to reinstate withdrawn contributions and interest for re-establishment of previous service.
>
> I also understand that I may retain my membership in the [NHRS] provided I do not withdraw my contributions . . . .

In 1993, believing that she was a member in service of the NHRS at the time of the withdrawal and would, therefore, have been eligible to apply for disability retirement benefits, the petitioner sought reinstatement of her membership in the NHRS, intending to buy back her withdrawn service credit. After multiple administrative denials, she appealed to the board, which denied her request. The board determined that she was not a member of the NHRS because she had withdrawn her contributions, and that she could only become a member again by obtaining employment recognized by RSA 100-A:3, I, at which point she could buy back withdrawn

service credit. Following this decision, and the denial of her motion for rehearing, she sought a writ of certiorari from this court.

The petitioner argues that she is entitled to rescind the withdrawal of her retirement funds and secure reinstatement because: (1) the board abused its discretion in denying reinstatement; (2) the NHRS had a fiduciary duty to advise her of her eligibility for disability retirement benefits prior to allowing her to withdraw her contributions; and (3) her withdrawal constituted a unilateral mistake. "[O]ur standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which [cannot] legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Herron*, 141 N.H. 245, 246-47, 679 A.2d 603, 604 (1996) (quotations and brackets omitted).

The petitioner first argues that the board's refusal to allow her to rescind her withdrawal constitutes an abuse of discretion because rescission is not prohibited by RSA chapter 100-A (1990 & Supp. 1997). "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Brewster Academy v. Town of Wolfeboro*, 142 N.H. 382, 383, 701 A.2d 1240, 1241 (1997). "When construing the meaning of statutes, we first look to the plain and ordinary meaning of the words used." *Appeal of Rowan*, 142 N.H. 67, 71, 694 A.2d 1002, 1004 (1997). For example, "shall" generally indicates a mandatory provision. *See id.*

RSA 100-A:3, V (1990) plainly states that "[a] member *shall* cease to be a member if . . . he withdraws his accumulated contributions." (Emphasis added.) To return to membership, RSA 100-A:3, I (Supp. 1997) requires an individual to become a statutorily recognized teacher, permanent policeman, permanent fireman, or employee. *See* RSA 100-A:1, V to VIII-b (1990 & Supp. 1997). After returning to membership, an individual may receive credit for prior service by repaying the amount withdrawn plus interest. *See* RSA 100-A:3, VI(a)-(c) (1990 & Supp. 1997).

Thus, the clear language of RSA 100-A:3, V dictates that the petitioner ceased to be a member of the NHRS when she withdrew all her accumulated contributions in 1992. The board may only act in accord with its enabling statute, RSA chapter 100-A, which provides no statutory authority to waive the mandates of RSA 100-A:3, VI(a). *See Belluscio v. Town of Westmoreland*, 139 N.H. 55, 56, 648 A.2d 211, 212 (1994) ("We will not insert into a statute words that the legislature has not chosen to include."); *cf.* RSA 100-A:6, V (Supp.

1997) (granting the board, in the interests of justice, authority to waive "in service" requirement for disability application if filed within one year of member's last contribution to the NHRS). Accordingly, because the statute does not vest the board with the discretion to waive the statute's directives, the petitioner's first argument is without merit.

■ The petitioner next argues that the NHRS owed her a fiduciary duty to inform her of her eligibility for disability retirement benefits before she acted to her detriment. "Under the common law of trusts, the [board] owes the [NHRS] members and beneficiaries a fiduciary obligation to manage the [NHRS] for the benefit of its members and beneficiaries." *N.H. Retirement System v. Sununu*, 126 N.H. 104, 109, 489 A.2d 615, 619 (1985). Although this duty encompasses the "power to hold, purchase, sell, assign, transfer, and dispose of any of the securities and investments" in which NHRS funds have been invested, RSA 100-A:15, I (Supp. 1997), it does not require the board to intervene and counsel each member considering withdrawal. *Cf. Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 985 (8th Cir. 1992) (noting that majority of courts have not imposed upon ERISA plan fiduciaries the duty to individually notify participants of the specific impact of plan's general terms upon them), *cert. denied*, 506 U.S. 1080 (1993). *See generally* RSA 100-A:15. To read RSA chapter 100-A as placing such an obligation on the NHRS would effectively render it a financial counseling and investment service, a service far more comprehensive than that required of the board in its capacity as trustee. *See generally* RSA 100-A:15; *see also* RESTATEMENT (SECOND) OF TRUSTS § 173 comment *d* at 378 (1959) ("Ordinarily the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information.").

■ Finally, the petitioner asserts that her withdrawal constituted a unilateral mistake that entitles her to rescission. Rescission is available when a unilateral mistake relates to the substance of the consideration, it occurred despite the exercise of ordinary care, enforcement would be unconscionable, and the other party can be returned to the status quo. *See Curran Company v. State*, 106 N.H. 558, 560, 215 A.2d 702, 703-04 (1965). A mistake is "a belief that is not in accord with the facts." *Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 332, 605 A.2d 1026, 1029 (1992) (quotation omitted). "A party bears the risk of a mistake when . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake

relates but treats his limited knowledge as sufficient." RESTATE-MENT (SECOND) OF CONTRACTS § 154(b) at 402-03 (1981). "It is sometimes said in such a situation that, in a sense, there was not mistake but conscious ignorance." *Id.* comment *c* at 404 (quotation omitted); *see McIsaac v. McMurray,* 77 N.H. 466, 475, 93 A. 115, 120 (1915).

Assuming, without deciding, that the doctrine of unilateral mistake applies in this situation, we conclude that when the petitioner withdrew her accumulated contributions, her state of mind was not one of mistake, but of "conscious ignorance." Confronted by financial pressures at the time, she made a conscious and deliberate choice to withdraw her contributions. Although she claims that she would not have withdrawn her contributions had she known that she was waiving her rights to receive future benefits, the waiver in the withdrawal form expressly notified her that she may have had other rights. She bore the responsibility to inquire as to their specific nature. In fact, the board provides counseling services for its members, and publishes and disseminates brochures specifically describing available disability benefits. By ignoring the waiver and other available sources of information, the petitioner assumed the risk of waiving a greater benefit than she received. *See Cohen v. North Ridge Farms, Inc.,* 712 F. Supp. 1265, 1271 (E.D. Ky. 1989) (no unilateral mistake because buyer assumed express risk of loss in sales contract).

For the foregoing reasons, the board's decision is affirmed. The petitioner has not obtained the requisite employment to re-establish her membership in the NHRS, *see* RSA 100-A:3, VI(a), nor is her ongoing receipt of workers' compensation benefits sufficient to do so, *see* RSA 100-A:3, VI(a)-(b). Thus, we need not address the issue of petitioner's eligibility for disability retirement benefits had she been able to buy back her prior service credit pursuant to RSA 100-A:3, VI(a)-(c). *See* RSA 100-A:6.

*Affirmed.*

All concurred.