NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Original
No. 2013-406


PETITION OF DAVID ESKELAND
(New Hampshire Retirement System)

Argued:  May 8, 2014
Opinion Issued:  August 8, 2014


Vanacore Law Office, of Concord (John G. Vanacore on the brief and orally), for the petitioner.


Getman, Schulthess & Steere, PA, of Manchester (Andrew R. Schulman on the brief and orally), for the respondent.


LYNN, J.  The petitioner, David Eskeland, seeks review of a ruling of the board of trustees (board) of the respondent, New Hampshire Retirement System (NHRS), denying his application for an accidental disability retirement pension. We affirm.

I

The record supports the following facts.  The petitioner began work at the New Hampshire Department of Fish and Game in 1990 and, accordingly, became a mandatory member of the NHRS.  See RSA 100-A:3 (Supp. 2013). On December 23, 2009, the petitioner and his wife met with NHRS benefits specialist Stacie Weaver for retirement counseling.  Weaver filled out a

discussion topic form, which the petitioner signed, to memorialize their meeting. On this form, Weaver marked "service" retirement as the topic of their discussion and gave the petitioner a service retirement brochure. Neither "ordinary disability" nor "accidental disability" retirements were marked as topics of discussion, but instead were marked as not applicable. At this meeting, the petitioner's wife briefly "broached the subject" of disability benefits but, given that the petitioner was "very against" disability retirement at that point, did not ask for details. The petitioner did not mention disability benefits at the meeting. Weaver testified that had the petitioner done so, she would have provided him with a disability retirement brochure and referred him to a benefits specialist certified to assist him with the disability retirement process.

On August 6, 2010, the petitioner went to the NHRS office to fill out a service retirement application. At that time he met with the NHRS's most experienced benefits specialist, Ann Forrestall, who reviewed the service retirement checklist with the petitioner. Like Weaver, Forrestall also testified that, had the petitioner mentioned disability benefits, she would have completed a different checklist and encouraged him to apply for both service and disability benefits simultaneously.

On October 1, 2010, the petitioner retired from the Department of Fish and Game with twenty years and three months of creditable service, at which point he began receiving his service retirement pension. After he retired, a friend told the petitioner that he should have retired on a disability retirement allowance rather than on a service retirement allowance. As a result of this conversation, and three months after he retired, the petitioner filed with the NHRS an application for accidental disability retirement based upon work-related injuries he sustained in 2002 and 2004. On December 13, 2011, the board accepted the hearings examiner's recommendation to deny the petitioner's application for accidental disability retirement. The recommendation was based upon a medical certification that the petitioner was not permanently incapacitated by a work-related injury because he had worked full-time, without accommodation, for six years following his most recently accepted workers' compensation injury. The petitioner timely requested that the board reconsider its decision denying his application, and the board referred the request to the hearings examiner.[1]

In reviewing the request for reconsideration, the hearings examiner became aware of a potential jurisdictional issue and notified the petitioner that, because he "was a beneficiary when he applied for disability retirement, his membership appears to have terminated and the Board of Trustees appears to

---

[1] The hearings examiner referred to this internal process as an "appeal" to the board. However, because the request was made to the same body that made the initial decision, we believe a more apt description is a request for reconsideration, which is how we describe the process in the text. See N.H. Admin. Rules, Ret. 204.10 (referring to "motions for rehearing or reconsideration").

2

lack jurisdiction to award him a disability retirement." After a three-day hearing, the hearings examiner recommended that the board find that it did not have jurisdiction to grant accidental disability retirement benefits pursuant to RSA 100-A:6 (Supp. 2013). The board accepted the recommendation on January 8, 2013, and this appeal followed.

II

The petitioner makes three arguments on appeal. First, he argues that the board erred in denying his accidental disability retirement application on jurisdictional grounds because a statutory exception would have allowed him to apply for those benefits for up to one year after his retirement date. Second, he argues that the NHRS breached its fiduciary duty to him by providing inaccurate advice about the date by which he needed to apply for accidental disability retirement. Third, he argues that the NHRS's failure to provide accurate information constituted a unilateral and/or mutual mistake of fact, thus enabling the board to rescind his service retirement application and allow him to apply for accidental disability retirement. We address each argument in turn below.

"Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of the NHRS." Petition of Carrier, 165 N.H. ___, ___, 82 A.3d 917, 920 (2013) (quotations omitted). "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." Id. (quotations omitted). "It is not our function to make de novo findings or to substitute our judgment for that of the board." Id. (quotations and brackets omitted).

A

The petitioner first argues that the statutory exception contained in RSA 100-A:6, V allows members to apply for disability benefits within one year of ceasing their membership. Resolving this issue requires that we engage in statutory interpretation. State Employees' Assoc. of N.H. v. State of N.H., 161 N.H. 730, 738 (2011). "The interpretation of a statute is a question of law, which we review de novo." Id. "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all

parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. at 738-39.

We begin by examining the language of RSA 100-A:6, which governs disability retirement benefits. It provides, in pertinent part: "Upon the application of a group II member in service . . . , any such member shall be retired by the board of trustees on an accidental disability retirement allowance" if certain medical criteria are met. RSA 100-A:6, II(c)(1).[2] There are thus two requirements to apply for accidental disability retirement: first, the person must be a "member"; and, second, the member must be "in service." RSA 100-A:1, X (2013) defines "member" as "any person included in the membership of the retirement system, as provided in RSA 100-A:3." RSA 100-A:3, V provides, in relevant part, that "[a] member shall cease to be a member if . . . he or she becomes a beneficiary or dies." A beneficiary, in turn, is defined as "any person receiving a retirement allowance or other benefit as provided herein." RSA 100-A:1, XI (2013); see also RSA 100-A:7 (2013) (providing that if a beneficiary is restored to service, "the beneficiary's retirement allowance shall cease, the beneficiary shall again become a member of the retirement system and the beneficiary shall contribute at the percentage payable pursuant to RSA 100-A:16, I(a)" (emphasis added)).

The statute clearly states that an individual must be a member to apply for an accidental disability retirement allowance, and that an individual cannot be both a "member" and a "beneficiary." The petitioner concedes that he became a beneficiary when he began collecting his service retirement pension. Under the plain language of the statute, then, the petitioner's status as a beneficiary precluded him from meeting the threshold "membership" requirement laid out in RSA 100-A:6, and thus from applying for accidental disability retirement.

The petitioner argues that even though he was a beneficiary at the time he applied for accidental disability retirement, RSA 100-A:6, V permitted the board to waive the membership requirement. This statute states:

> The provisions of this paragraph shall apply, notwithstanding any other provisions of RSA 100-A:6 to the contrary. The board of trustees, as the interests of justice may require, may waive the requirement that a group I or group II member be in service at the

---

[2] Conservation officers employed by the Department of Fish and Game are group II members of the NHRS. See RSA 100-A:1, VII(a) (2013).

4

time application is made for ordinary and accidental disability retirement benefits under this section, provided that application for disability retirement benefits is made within one year of the date the member's contribution to the New Hampshire retirement system ceases.

(Emphasis added.)  The plain and ordinary meaning of the statutory language does not support the petitioner's argument.  The statute states that the board may waive the requirement that a group II member be in service at the time he or she applies for disability retirement; it does not waive the requirement that the individual be a member at that time.  Thus, this provision would apply, for example, to a member who had not retired, but was not in service due to reasons other than retirement.  To accept the petitioner's interpretation, we would be required to import language into the statute that the legislature did not see fit to include, a task we are not at liberty to undertake.  See State Employees' Assoc., 161 N.H. at 738.  Accordingly, we agree with the NHRS that RSA 100-A:6, V is a narrow statutory exception that permits waiver only of the "in service" requirement, but does not affect the membership requirement.

The petitioner further argues that even if the statutory exception does not, on its face, permit waiver of the membership requirement, the use of the phrase "member or retired member" in other parts of the statute creates an ambiguity as to the definition of the term "member."  See RSA 100-A:6, III(c), (d).  Specifically, the petitioner asserts that by using this phrase, the statute suggests that a member can also be a beneficiary.  Thus, he asserts, it creates an ambiguity that allows us to consult legislative history for guidance in interpreting the definition of "member."  We disagree.

In considering the statute as a whole, we conclude that the phrase "member or retired member" does not create ambiguity.  First, the term "member" is clearly defined in RSA 100-A:1, X and RSA 100-A:3, I, V, as detailed above.  By its own terms, RSA 100-A:1 (2013) defines certain "words and phrases as used in [RSA chapter 100-A] unless a different meaning is plainly required by the context."  RSA 100-A:1 (emphasis added); see State Employees Assoc. of N.H. v. N.H. Div. of Personnel, 158 N.H. 338, 341 (2009).  Here, the petitioner does not argue, nor do we conclude, that the context "plainly requires" us to depart from that section's definition of the term "member."  Second, the use of the word "or" in the phrase "member or retired member" shows that a retired member is not a member within the meaning of the statute.  Rather, they are distinct terms and, thus, the use of the term "retired member" does not cast doubt on the meaning of the plainly defined term "member."  Third, the statute uses the term "retired member" interchangeably with "retiree," see RSA 100-A:13, II(a) (2013), showing, albeit imprecisely, that the term refers to former, not current, members of the NHRS.  See RSA 100-A:13, I (2013) (distinguishing "members" from "retirees"); see also

5

RSA 100-A:1, XXIII (2013) (defining "retirement" as "withdrawal from active service with a <u>retirement allowance</u> granted under the provisions hereof" (emphasis added)); RSA 100-A:1, XI (defining "beneficiary" as "any person receiving a <u>retirement allowance</u> or other benefit as provided herein" (emphasis added)); RSA 100-A:3, V (stating that a "member shall cease to be a member" if "he or she becomes a beneficiary").

Because we find that the phrase "member or retired member" does not create ambiguity, and because the statutory exception is clear on its face, we need not consider the legislative history of the retirement statute. See <u>Union Leader Corp. v. N.H. Retirement Sys.</u>, 162 N.H. 673, 676 (2011) ("When interpreting a statute, we first look to the plain meaning of the words used and will consider legislative history only if the statutory language is ambiguous." (quotation omitted)). We also need not address the second requirement that a member be "in service" to apply for disability retirement, as the petitioner did not meet the membership requirement. Accordingly, we conclude that the NHRS did not err when it found that the petitioner was precluded from applying for accidental disability retirement because he was no longer a member and no statutory exception to membership applied.

B

The petitioner next argues that the NHRS breached its fiduciary duty to him by providing inaccurate advice regarding his disability retirement application. Specifically, he contends that the NHRS was obligated to tell him that he needed to apply for disability retirement before he retired and that, had he been accurately informed, he would have applied for disability retirement rather than service retirement. We find this argument unavailing.

"Under the common law of trusts, the board owes the NHRS members and beneficiaries a fiduciary obligation to manage the NHRS for the benefit of its members and beneficiaries." <u>Petition of Barney</u>, 142 N.H. 798, 802 (1998) (quotations and brackets omitted). However, we have held that this duty "does not require the board to intervene and counsel each member." <u>Id</u>. (quotations and citation omitted); <u>cf</u>. <u>Maxa v. John Alden Life Ins. Co.</u>, 972 F.2d 980, 985 (8th Cir. 1992) (noting that the majority of courts have not imposed upon ERISA plan fiduciaries the duty to individually notify participants of the specific impact of a plan's general terms upon them). "To read RSA chapter 100-A as placing such an obligation on the NHRS would effectively render it a financial counseling and investment service, a service far more comprehensive than that required of the board in its capacity as trustee." <u>Barney</u>, 142 N.H. at 802.

The petitioner's argument that the NHRS breached its fiduciary duty to him fails for several reasons. First, because the NHRS is not a financial

counseling and investment service, it had no general fiduciary duty to advise the petitioner about all possible retirement options. This is particularly so given that the petitioner indicated that he was only interested in service retirement and was "very against" disability retirement. Second, although the NHRS concedes that under certain circumstances, it "could undertake a special fiduciary duty to a member with respect to specific advice rendered to that member," the record does not contain evidence that would have given rise to a special fiduciary duty under the circumstances presented here. See Schneider v. Plymouth State College, 144 N.H. 458, 462 (1999) ("A fiduciary relationship . . . exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." (quotations omitted)). To the contrary, the hearings examiner found that the petitioner did not seek advice regarding disability retirement, but instead was focused upon only service retirement.[3] Further, there is no evidence in the record, and the hearings examiner did not find, that the NHRS independently brought up or in any way sought to advise the petitioner about disability retirement prior to his retirement on a service pension. See Carrier, 165 N.H. at ___, 82 A.3d at 920 (it is not our function to make de novo findings of fact, or substitute our judgment for that of the board). For these reasons, we conclude that the board did not err in finding that the NHRS did not breach a fiduciary duty to the petitioner.

C

Finally, the petitioner argues that the NHRS's inaccurate advice constituted either a unilateral or a mutual mistake, thus requiring the board to rescind his service retirement allowance and allow him to reapply for disability retirement. He specifically contends that certain employees of the NHRS were mistaken as to the time frame within which he could apply for disability retirement, as evidenced in part by the fact that they accepted his disability retirement application after he had already retired under a service retirement pension. Once again, we disagree.

In order for the doctrine of mutual mistake to afford relief, there must be a causal connection between the alleged mistake and some detrimental action

---

[3] The hearings examiner made the following findings:

> [T]he weight of the evidence indicates that Mrs. Eskeland asked about disability retirement at least once but that the Petitioner, the subject of the retirement counseling, was focused on applying for a service retirement. The testimony of two Benefits Specialists that they would have followed a different counseling procedure if the Petitioner had indicated he wanted to apply for a disability retirement along with his service retirement and the Petitioner's signature on a retirement counseling checklist that indicated that disability was "N/A" support the conclusion that he did not seek the advice of the employees of the retirement system with regard to a disability retirement until 1/20/12, after he had retired.

7

by the party seeking relief. See Derouin v. Granite State Realty, Inc., 123 N.H. 145, 147 (1983) ("Where the parties to a transaction are mutually mistaken as to a basic assumption on which the contract is made and that mistake has a material effect upon the agreed transaction, the contract is voidable by the adversely affected party." (emphasis added)). Here, because the actions of the NHRS employees in accepting his application for disability retirement occurred after the petitioner had begun receiving a service retirement allowance, such conduct could not have impacted his original retirement decision.

As for unilateral mistake, we have observed that "[r]escission is available when a unilateral mistake relates to the substance of the consideration, it occurred despite the exercise of ordinary care, enforcement would be unconscionable, and the other party can be returned to the status quo." Barney, 142 N.H. at 802. "A mistake is a belief that is not in accord with the facts." Id. (quotations omitted). Here, even if we assume that a person's mistaken understanding of the meaning of a statute could be sufficient to invoke the doctrine of unilateral mistake, but see State v. Stratton, 132 N.H. 451, 457 (1989) ("Ignorance of the law is no excuse."), the record does not show that the petitioner's belief that he could convert to a disability retirement allowance after he began receiving a service retirement allowance is consistent with the exercise of ordinary care. As noted previously, the hearings officer found that when the petitioner first met with Ms. Weaver, his wife "broached the subject" of disability retirement. Yet, he was not interested in pursuing that option and made no inquiry into the requirements and applicable limitations on his ability to choose disability retirement. Nor does the petitioner offer any developed argument as to how, or why, it is unconscionable to limit him to the benefits he currently receives under his service retirement pension. See Appeal of Northern New England Tele. Operations, LLC, 165 N.H. 267, 275 (2013) (judicial review not warranted for claims unsupported by adequately developed legal argument). Accordingly, we find that the board did not err in rejecting petitioner's argument regarding unilateral and/or mutual mistake.

III

For the reasons stated above, we hold that the NHRS board properly denied the petitioner's application for an accidental disability retirement pension.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

8