NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-821


AMERICAN FEDERATION OF TEACHERS – NEW HAMPSHIRE & a.

v.

STATE OF NEW HAMPSHIRE & a.

Argued: November 13, 2014
Opinion Issued: January 16, 2015


Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Andru H. Volinsky, Christopher G. Aslin, and Talesha L. Caynon on the brief, and Mr. Volinsky orally), Molan, Milner & Krupski, PLLC, of Concord (Glenn R. Milner on the brief), Stember Feinstein Doyle Payne & Kravec, LLC, of Pittsburgh, Pennsylvania (William T. Payne and Stephen M. Pincus on the brief), and Gottesman & Hollis, PA, of Nashua (David M. Gottesman on the brief), for the plaintiffs and intervenors.


Joseph A. Foster, attorney general (Richard W. Head, associate attorney general, on the brief and orally), for the State.

Getman, Schulthess & Steere, PA, of Manchester (Andrew R. Schulman on the brief), and McLane, Graf, Raulerson & Middleton, PA, of Manchester (Michael A. Delaney orally), for New Hampshire Retirement System.

DALIANIS, C.J.  The State appeals the Superior Court's (McNamara, J.) ruling that legislative changes to the definition of "earnable compensation" applicable to members of the New Hampshire Retirement System violate the Contract Clauses of the New Hampshire and United States Constitutions.  The plaintiffs and the intervenors cross-appeal the court's rulings that members' rights to retirement benefits do not vest until they accrue ten years of creditable service, and that members do not have vested rights to cost-of-living adjustments to their pensions.  The New Hampshire Retirement System takes no position on the legal issues raised in the appeal, but objects to the remedy sought by the plaintiffs and the intervenors.  For the reasons set forth below, we reverse the trial court's ruling on "earnable compensation," and affirm its ruling on cost-of-living adjustments.

The following undisputed facts are supported by the record.  The New Hampshire Retirement System (NHRS), as set forth in RSA chapter 100-A, is a contributory, public employee, defined-benefit pension plan, qualified under section 401(a) of the Internal Revenue Code and funded through a trust.  See RSA 100-A:2 (2013).  NHRS is funded by member contributions, employer contributions, and investment gains.  The percentage of "earnable compensation" that is contributed by members is set by the legislature.  RSA 100-A:16, I (Supp. 2014).  NHRS members receive retirement benefits in proportion to the member's "average final compensation."  See RSA 100-A:5 (2013), :6 (Supp. 2014).  Average final compensation is defined as the average of a member's three highest years of "earnable compensation."  See RSA 100-A:1, XVIII(a) (2013); see also RSA 100-A:1, XVIII(b) (2013) (establishing five year period to determine average final compensation for members who have not attained vested status prior to January 1, 2012).

In 2007 and 2008, the legislature amended RSA chapter 100-A, including changing the definition of "earnable compensation" in RSA 100-A:1, XVII, by largely excluding from it "other compensation," and altering the method of funding cost-of-living adjustments (COLAs) in RSA 100-A:41-a.  See Laws 2007, 268:8; Laws 2008, 300:1, :8, :19.

In August 2009, the plaintiffs filed a petition for declaratory and injunctive relief challenging the constitutionality of the changes to the statute. The plaintiffs included: the American Federation of Teachers – New Hampshire, the National Education Association – New Hampshire, the New England Police Benevolent Association IUPA Local 9000, AFL-CIO, the New Hampshire Association of Fire Chiefs, the New Hampshire Police Association, the New

Hampshire Retired Educators Association, the New Hampshire School Administrators Association, the Professional Fire Fighters of New Hampshire, the State Employees Association of New Hampshire, SEIU Local 1984, and several individuals. The petition was amended in May 2010. In addition to claims against the State, the amended petition included claims pursuant to 42 U.S.C. § 1983 against the Chair of the New Hampshire Retirement System and the Governor, and sought restitution against NHRS. However, the parties subsequently jointly tolled the Section 1983 claims pending resolution of the constitutional issues. The petition was amended again in February 2013 to, among other things, include additional individual plaintiffs.

In November 2010, the parties filed cross-motions for summary judgment. The plaintiffs claimed that the amendments violated the Contract Clauses of the State and Federal Constitutions, arguing that RSA chapter 100-A constitutes a contract, that "[t]he statute providing for the formula to calculate pension benefits, which included consideration of 'other compensation' in determining the retiree's average salary, created vested rights," and that eliminating "other compensation" from the formula constituted a substantial impairment of their vested rights. The plaintiffs also argued that "[t]he statute that promised a . . . COLA to NHRS members . . . created vested rights," and that the statutory amendments constituted a substantial impairment of those rights. The State argued that RSA chapter 100-A does not create a contract with respect to the definition of "earnable compensation," because the statute did not evince a clear intent by the legislature to be bound by the statute and not permitted to change it, and that, even if the statute did create a contract, the plaintiffs failed to show that the amendments "impair the contract to a substantial degree," or that they are retroactive. The State further argued that the plaintiffs did not have vested rights in COLAs because receipt of a COLA is based upon contingency and was procedural in nature, and that even if the amendments substantially impair a contract, they were reasonable and necessary to serve an important public purpose because the prior statute jeopardized the plan's tax exempt status under the Internal Revenue Code.

Following a hearing, the trial court issued its order. The court dismissed the nine non-individual plaintiffs for lack of standing, but allowed them to proceed as intervenors. The State does not challenge this ruling on appeal and, although the plaintiffs raised it in their notice of cross-appeal, they did not brief the issue and, therefore, we deem it waived. See Lally v. Flieder, 159 N.H. 350, 351 (2009). Thus, we assume, without deciding, that the non-individual plaintiffs have standing to be intervenors. See G2003B, LLC v. Town of Weare, 153 N.H. 725, 727 (2006). The trial court found that certain public officers and employees covered by RSA chapter 100-A have a contractual right to have "other compensation" considered in the calculation of their average final compensation, and that the amendment creates a substantial impairment as a matter of law, "because it alters the compensation-calculation formula for

3

those whose rights have already vested, and in doing so, it eliminates an entire category of 'earnable compensation' for purposes of calculating average final compensation and thus pension payments for those [who] have already retired." In addition, the trial court found that the amendments to the COLA statute did not violate the State or Federal Contract Clauses. Noting that the State made "a cogent argument that petitioners had no vested right in a COLA prior to the amendments in question because receipt of a COLA was based on a contingency," the trial court also reasoned that because the failure to amend the statute "could have jeopardized the tax exempt status of the entire pension trust, . . . [t]he loss of the tax exempt status of the Retirement Trust would be considered an interest that is reasonable and necessary to serve an important public purpose." (Quotation omitted.) Thus, the court concluded that "even if Petitioners have vested rights to receive a COLA, the State's infringement is necessary to serve a substantial public purpose."

On appeal, the State argues that the trial court erred by ruling that public officers and employees covered by RSA 100-A have a contractual right to a fixed definition of "earnable compensation." The plaintiffs and intervenors (collectively, the plaintiffs) argue that the trial court erred by ruling that NHRS members vest upon accruing ten years of service rather than upon attaining "permanent" employee status, and by ruling that they do not have vested rights to a COLA.

In reviewing the trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." N.H. Assoc. of Counties v. State of N.H., 158 N.H. 284, 287-88 (2009) (quotation omitted). We review the trial court's application of the law to the facts de novo. Antosz v. Allain, 163 N.H. 298, 299 (2012).

We review the constitutionality of a statute de novo. N.H. Assoc., 158 N.H. at 288. "The party challenging a statute's constitutionality bears the burden of proof." Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 640 (2010) (quotation omitted). "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." Baines v. N.H. Senate President, 152 N.H. 124, 133 (2005) (quotation omitted). "In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." Id. (quotation omitted). Thus, a statute will not be construed to be unconstitutional when it is susceptible to a construction rendering it constitutional. White v. Lee, 124 N.H. 69, 77-78 (1983). "When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State, 161 N.H. 49, 53 (2010).

4

The contract clause of the United States Constitution provides: "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. CONST. art. I, § 10. Part I, Article 23 of the New Hampshire Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." N.H. CONST. pt. I, art. 23. Although Part I, Article 23 "does not expressly reference existing contracts . . ., we have held that its proscription duplicates the protections found in the contract clause of the United States Constitution." State v. Fournier, 158 N.H. 214, 221 (2009) (quotation omitted). "We . . . understand article I, section 10 [of the Federal Constitution] and part I, article 23 [of the State Constitution] to offer equivalent protections where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract." Opinion of the Justices (Furlough), 135 N.H. 625, 630 (1992). Thus, "every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective" within the meaning of Part I, Article 23. Tuttle, 159 N.H. at 641 (quotation omitted).

When evaluating a contract clause claim, a court must first determine "whether a change in state law has resulted in the substantial impairment of a contractual relationship." Parker v. Wakelin, 123 F.3d 1, 4-5 (1st Cir. 1997) (quotations omitted). This inquiry, in turn, has "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Id. at 5 (quotation omitted). To survive a contract clause challenge, a legislative enactment that constitutes a substantial impairment of a contractual relationship "must have a significant and legitimate public purpose." Energy Reserves Group v. Kansas Power & Light, 459 U.S. 400, 411 (1983).

Recognizing that "'[t]he principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state,'" we recently adopted the "unmistakability doctrine." See Prof. Fire Fighters of N.H. v. State, 167 N.H. ___, ___ (decided December 10, 2014) (quoting National R. Passenger Corp. v. A. T. & S. F. R. Co., 470 U.S. 451, 466 (1985)). The doctrine "mandates that we determine whether the challenged legislative enactment evinces the clear intent of the state to be bound to particular contractual obligations." Id. at ___ (quotation omitted). "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." National, 470 U.S. at 466. Thus, "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." Id. at 465-66 (quotation omitted).

5

"When reviewing a particular enactment, . . . we . . . proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." Parker, 123 F.3d at 7-8 (quotation omitted). We begin by examining the statutory language itself, National, 470 U.S. at 466, and perform a close analysis of the statutory provision at issue, see Parker, 123 F.3d at 7. We first address the parties' arguments under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

The State argues that because RSA 100-A:1, XVII does not contain unmistakable language that the legislature intended to establish a fixed definition of employee compensation as a contractual right, the amendments to the definition do not violate the State or Federal Contract Clauses. Prior to the amendments at issue, "earnable compensation" was defined as,

> the full base rate of compensation paid plus any overtime pay, holiday and vacation pay, sick pay, longevity or severance pay, cost of living bonus, additional pay for extracurricular and instructional activities or for other extra or special duty, <u>and other compensation paid to the member by the employer</u>, plus the fair market value of non-cash compensation such as meals or living quarters if subject to federal income tax.

RSA 100-A:1, XVII(a) (Supp. 2007) (amended 2008, 2014) (emphasis added); Laws 1991, Chapter 313:1. Although the term "other compensation" was not defined in the statute, the trial court found that it has included: "automobile allowances/reimbursements; clothing/uniform allowances, stipends or reimbursements; educational assistance; amounts paid for waiving employer-provided health and dental insurance; domestic partner medical coverage; health and fitness reimbursement; moving/relocation expenses/ per diem or fixed travel allowance; [and] settlement amounts paid to employees."

The trial court determined that the "threshold issue . . . is whether RSA chapter 100-A creates contractual rights in State employees." Relying upon RSA 100-A:10, which establishes the terms of a member's "vested deferred retirement allowance," the court reasoned that "eligible employees become contractually entitled to pension benefits – which may not be modified – after ten years of creditable service." Thus, the court concluded that "despite [the] failure of RSA 100-A:1 to define 'other compensation,' the statute does create a contract between state employees and their employers to receive this category of compensation" and "any employee who has completed ten years of service while that provision was in effect has a vested right to it."

As the United States Court of Appeals for the First Circuit has explained, when used in the context of a pension plan, the terms "'[v]esting' and 'contractual' are not synonymous," and references in a statute to "vesting" do

6

not necessarily create a contract.  National Educ. Ass'n-Rhode Island v. Retirement Bd., 172 F.3d 22, 26, 28 (1st Cir. 1999).  "Often, . . . 'vesting' refers to the period provided by a plan for which an employee must work to become eligible for a pension if and when he attains retirement age.  Whether a plan affords contractual protections against change in its terms is a different question."  Id. at 28.  The First Circuit has "been quite hesitant to infer a contract where the state pension statute neither speaks in the language of contract nor explicitly precludes amendment of the plan."  Id. at 27.  The court reasoned that "[a]fter all, legislatures regularly modify compensation schedules and benefit programs.  [United States] Supreme Court precedent has tended to treat government pension statutes as similarly subject to modification for payments not yet made, unless the government's intent to create a contract is clear and definite."  Id.  "The policy reasons for protecting legislative power against implied surrender are too obvious to warrant much elaboration, and it is easy enough for a statute explicitly to authorize a contract or to say explicitly that the benefits are contractual promises, or that any changes will not apply to a specific class of beneficiaries."  Id. at 27-28 (citations and footnote omitted).

Prior to the statutory amendments at issue, RSA 100-A:10, titled "Vested Deferred Retirement Benefit" provided in pertinent part:

> (a) A group I member who has completed 10 years of creditable service and who, for reasons other than retirement or death, ceases to be an employee or teacher shall be deemed in vested status and upon meeting the eligibility requirements of subparagraph (b) may collect a vested deferred retirement allowance.  In lieu of a vested deferred retirement allowance, the member may make application on a form prescribed by the board of trustees and receive a return of the member's accumulated contributions under RSA 100-A:11.

> (b) At any time after attainment of age 50, a group I member who meets the requirement of subparagraph (a) may make application on a form prescribed by the board of trustees and receive a vested deferred retirement allowance which shall consist of a member annuity which shall be the actuarial equivalent of the member's accumulated contributions on the date of retirement and a state annuity which, together with the member annuity, shall be equal to either the service retirement allowance payable under RSA 100-A:5, I(a) and I(b) or the reduced early service retirement allowance payable under RSA 100-A:5, I(c), based on the member's age when the vested deferred retirement allowance begins and on the member's average final compensation and creditable service at the time service is terminated.

7

RSA 100-A:10, I(a), (b) (2001) (amended 2011).  The statute contained materially similar language with respect to Group II members, although with different age requirements.  See RSA 100-A:10, II(a), (b) (2001) (amended 2011).

Under the plain language of the statute, a member who completes ten years of creditable service achieves "vested status."  RSA 100-A:10, I(a).  Even if a member thereafter leaves state employment and works elsewhere, after meeting the age requirements set forth in the statute, the member "may collect" a retirement allowance or opt to receive a return of his or her contributions.  Id.  Thus, "vesting" refers to the period of time that a member must work to become eligible for a pension.  Upon a close reading of the statutory language, we find no unmistakable language that the legislature intended, as the trial court concluded, that once a member "vests," a contractual commitment has been established whereby none of the terms of his or her future benefit may ever be modified prospectively by a change in the law.

The plaintiffs argue that, based upon Cloutier v. State, 163 N.H. 445 (2012), RSA chapter 100-A constitutes a contract, and members "obtain vested status when they first become permanent employees of the state or of political subdivisions for which they work."  Rejecting this argument, the trial court reasoned that "Cloutier is fundamentally distinguishable from the current case and the category of state employees at issue."  It noted that Cloutier was interpreting an entirely different statutory scheme, and the analysis in the opinion was based upon unequivocal language in that statute which entitled judges to retirement benefits as "additional compensation for services rendered and to be rendered." (Quotation omitted.)  It also observed that the statement in Cloutier that pension benefits vest upon an employee's attaining "permanent employment status" is not the holding of the case. (Quotation omitted.)  We agree.  Our task is to discern the intent of the legislature through analysis of the language of the statute before us, and the circumstances of the party claiming the contractual right.  See  Petition of Eskeland, 166 N.H. 554, 558 (2014); see also Parella v. R.I. Employees' Retirement System, 173 F.3d 46, 61 (1st Cir. 1999).  "Such circumstances, by their nature, will vary from case to case.  Particular plaintiffs bringing particular Contract Clause claims . . . may find themselves in markedly different circumstances." Parella, 173 F.3d at 61.

We conclude that RSA 100-A:1, XVII does not demonstrate an unmistakable intent by the legislature to bind itself against prospectively changing the definition of "earnable compensation."  Furthermore, the legislative change to the definition of "earnable compensation" does not retroactively affect the calculation of NHRS member benefits.  As the State explains, if, for example, an NHRS member had "earnable compensation" of $50,000 in 2006, of which $500 represented "other compensation" in the form of a clothing allowance, the member's "earnable compensation" for the year 2006 would always be $50,000 for purposes of determining that member's "average final compensation."  Thus, if at the end of the member's government

8

service, the year 2006 was one of the member's three highest years of "earnable compensation," the $50,000 would be included as one of the three figures to be averaged for the determination of "average final compensation." Accordingly, we reverse the trial court's ruling that the amendment changing the definition in RSA 100-A:1, XVII violates the State Contract Clause. Because the Federal Constitution affords the plaintiffs no greater protection than does the State Constitution in these circumstances, we reach the same conclusion under the Federal Constitution as we do under the State Constitution. See Maine Ass'n of Retirees v. Board of Trustees, 758 F.3d 23, 29 (1st Cir. 2014).

The plaintiffs argue that the trial court erred by ruling that public officers and employees covered by RSA chapter 100-A do not have vested rights to a COLA. They contend that the "clear and unambiguous language" of the statute prior to its amendment "must be considered to grant a vested right to NHRS members to a COLA." The State argues that the plaintiffs had no vested right to a COLA prior to the amendment "because receipt of a COLA was based on the occurrence of several contingencies," and, therefore, as a matter of law, there was no vested right in future COLAs.

Prior to the amendments at issue, RSA 100-A:41-a, titled "Supplemental Allowances," provided:

> I. Any retired member of the New Hampshire retirement system or any of its predecessor systems, who has been retired for at least 12 months, or any beneficiary of such member who is receiving an allowance, shall be entitled to receive supplemental allowances, also known as cost of living adjustments or COLA's, on the retired member's latest anniversary date. The amount of such supplemental allowances shall be limited to from one percent to 5 percent, with increments of no less than 1/2 of one percent.
>
> . . . .
>
> III. (a) The granting of any such supplemental allowance, or of any increase in supplemental allowances, shall be contingent on terminal funding of the total actuarial cost thereof at the time of granting. Such terminal funding shall be from the special account established under RSA 100-A:16, II(h).

RSA 100-A:41-a, I, III(a) (Supp. 2007) (amended 2008, 2009, 2010, 2012).

We are not persuaded that the statutory language established a contractual obligation to provide a COLA. In the absence of evidence that the legislature unmistakably intended to bind itself contractually, we presume that the law "merely declares a policy to be pursued until the legislature shall ordain otherwise." National, 470 U.S. at 465-66 (quotation omitted); see

Justus v. State, 336 P.3d 202, 211 (Colo. 2014) (statute does not contain "contractual or durational language stating or suggesting a clear legislative intent to bind itself, in perpetuity, to paying . . . a specific COLA formula"). Furthermore, "a cost-of-living adjustment to a retirement benefit, by it[s] own terms, is not necessarily the same thing as the underlying retirement benefit." Bartlett v. Cameron, 316 P.3d 889, 893 (N.M. 2013) (emphasis omitted). Pursuant to RSA 100-A:10, eligible members may collect a "retirement allowance," which by definition is limited to "the sum of the member annuity and the state annuity." RSA 100-A:1, XXII (Supp. 2014). "Member annuity" is defined as "annual payments for life derived from the accumulated contributions of the member." RSA 100-A:1, XX (Supp. 2014). "State annuity" is defined as "annual payments for life derived from contributions by an employer." RSA 100-A:1, XXI (Supp. 2014). Nowhere does the statutory language state that a retirement allowance includes COLAs. See Maine Ass'n of Retirees, 758 F.3d at 31 (it is not unmistakably clear that COLAs fall within the umbrella of benefits that the legislature is assumed to be contractually obligated not to reduce).

We hold that there is no indication that, in enacting RSA 100-A:41-a, the legislature unmistakably intended to bind itself against prospectively changing the method of funding COLAs. See Scott v. Williams, 107 So. 3d 379, 388-89 (Fla. 2013) (elimination of COLA was prospective change within the authority of the legislature; benefits tied to service performed prior to the amendment date are not lost or impaired). We need not, therefore, address the issues pertaining to the tax exempt status of the pension trust, or NHRS's objection to the remedy sought by the plaintiffs. Accordingly, we affirm the trial court's ruling that the amendment does not violate the State Contract Clause. Because the Federal Constitution affords the plaintiffs no greater protection than does the State Constitution in these circumstances, we reach the same conclusion under the Federal Constitution as we do under the State Constitution. See Maine Ass'n of Retirees, 758 F.3d at 29. Thus, we need not address the remaining issues raised by the plaintiffs in their cross-appeal.

Affirmed in part; reversed in part; and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

10