NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Retirement System
No. 2021-0308

PETITION OF LOUIS L. LAFASCIANO
(New Hampshire Retirement System)

Submitted: June 14, 2022
Opinion Issued: November 15, 2022

Louis L. Lafasciano, self-represented party, on the brief.

Foley Law Office, of Concord (Peter T. Foley on the brief), for the respondent.

Margaret Emily Murray, self-represented party, on the brief.

HICKS, J. The petitioner, Louis L. Lafasciano, seeks review of a decision of the respondent, New Hampshire Retirement System Board of Trustees (Board), rescinding a previously-granted termination of the survivorship benefit of his former spouse, the intervenor Margaret Emily Murray, in his state pension. We affirm.

The following facts were recited in the Board's decisions or relate the contents of documents in the record. The petitioner is a retired member of the New Hampshire Retirement System (NHRS). At the time he retired, the petitioner named the intervenor, then his spouse, as his survivor beneficiary,

thereby reducing the amount of the retirement benefit he received during his lifetime.  See RSA 100-A:13, I (2013) (amended 2022), III (2013).  Under the law then in effect, a retired member who designated his or her spouse as survivor beneficiary could terminate that designation during the spouse's lifetime only if the parties divorced and the spouse remarried.  See RSA 100-A:13, II(a)(1) (2013) (amended 2016).  The petitioner and the intervenor divorced in 2014.

In 2016, the legislature amended RSA 100-A:13 to provide an additional circumstance under which a retired member could terminate a previously-elected spousal survivorship benefit.  See Laws 2016, 292:2.  As amended, the law provides that the retired member can "[t]erminate such elected option . . . in accordance with the terms of the final divorce decree or final settlement agreement which provides that the former spouse shall renounce any claim to a retirement allowance under RSA 100-A."  RSA 100-A:13, II(a)(I) (Supp. 2021).  "Upon termination, the allowance received under the elected option shall be converted to the retirement allowance that would have been payable in the absence of such election."  Id.

In November 2016, the petitioner requested that the intervenor be removed as his primary death beneficiary, stating that the two had been "divorced for two years now, and since the change in state legislation this past August [he] believe[d] that [his] request [could] now be honored."  NHRS processed the termination and informed the petitioner that his new benefit would be effective December 1.

In July 2020, NHRS informed the petitioner that his 2016 request for termination of his survivor benefit option had been processed in error.  It further informed him that NHRS would be "rescinding that termination and reinstituting the 100% joint and survivor option you originally selected for your former spouse" and would be "instituting recoupment proceedings to recover the cumulative pop-up amount that has been paid to you since December 2016."

The petitioner filed an administrative appeal, in which his former spouse was permitted to intervene.  Following a non-evidentiary hearing, the hearing examiner recommended upholding NHRS staff's decision to reinstate the intervenor as survivor beneficiary.  The Board accepted the hearing examiner's recommendation on March 9, and, on June 8, denied the petitioner's request for reconsideration.  The petitioner then filed a petition for writ of certiorari with this court.

"Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of the NHRS."  Petition of Malisos, 166 N.H. 726, 728 (2014) (quotation omitted).  "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a

conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." Id. (quotation omitted). "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice." Petition of Chase Home for Children, 155 N.H. 528, 532 (2007).

The petitioner first challenges the Board's authority to correct errors in the absence of fraud. Counsel for NHRS made clear at the non-evidentiary hearing that there was "no allegation of fraud of any kind" in this case.

The Board found that it has the authority, under RSA 100-A:27, "to correct an error in the record regardless of how the error occurred, and without any allegation of fraud on the part of the member/retiree." That statute provides:

> **Protection Against Fraud.**
>
> Any person who shall knowingly make any false statement or shall falsify or permit to be falsified any record or records of this retirement system in any attempt to defraud the system as a result of such act, shall be guilty of a class B felony if a natural person, or guilty of a felony if any other person. Should any change or error in the records result in any member or beneficiary receiving from the system more or less than he would have been entitled to receive had the records been correct, the board of trustees shall have the power to correct such error, and to adjust as far as practicable the payments in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid.

RSA 100-A:27 (2013).

The petitioner asserts that the intent of the statute, correctly interpreted, "is to address the issue of fraud as the law is titled." The Board counters that "[t]he title of a statute is not conclusive of its interpretation, and where the statutory language is clear and unambiguous this court will not consider the title in determining the meaning of the statute." State v. Kilgus, 125 N.H. 739, 742 (1984). It argues that "the mere fact that the statute is entitled 'Protection Against Fraud' does not impose a fraud requirement where one is not mandated by the text of the statute." Indeed, we have held:

> If we find within the body of the act an express and unequivocal grant of powers and rights not mentioned in the title or preamble, we cannot restrict the grant of those rights merely because the terms of such grant are more extensive than the terms of the title and preamble.

3

Vera Co. v. State, 78 N.H. 473, 475 (1917) (quotation omitted).  Thus, our first task is to determine whether the language of RSA 100-A:27 is "clear and unambiguous."  Kilgus, 125 N.H. at 742.  Accordingly, we engage in statutory interpretation, and, therefore, our review is de novo.  See Merrimack Premium Outlets v. Town of Merrimack, 174 N.H. 481, 484 (2021).

When interpreting statutes, "[w]e first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Petition of Eskeland, 166 N.H. 554, 558 (2014).  "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id. (quotation omitted).  "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."  Id. (quotation omitted).  "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole."  Id. (quotation omitted).  "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme."  Id. (quotation omitted).

The Board contends that "[t]he text of RSA 100-A:27 is not ambiguous" and "clearly provides the Board . . . with the authority to correct an error" in NHRS records when the error results in a member or beneficiary receiving more or less from NHRS than the member or beneficiary would receive if the records did not contain the error.  This argument follows the hearing examiner's reasoning that "[t]he second sentence [in RSA 100-A:27] does not refer to the previous sentence, nor does it include any requirement that the error in the record be the result of fraud."  We find the Board's interpretation reasonable.

The petitioner's interpretation, on the other hand, reads the first and second sentences together, such that application of the second sentence is limited by the first.  Under that interpretation, the "change or error in the records" discussed in the second sentence refers to a change or error resulting from a false statement or falsification of records declared to be criminal in the first sentence.  We find this interpretation also reasonable.  See Petition of State of N.H. (State v. Milner), 159 N.H. 456, 458-59 (2009) (finding two differing interpretations of successive sentences of statute reasonable).

"[B]ecause there is more than one reasonable interpretation of its language," RSA 100-A:27 is ambiguous.  Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 761 (2014).  Under such circumstances, we will, as the petitioner urges, consider "[t]he statute's title . . . [as] additional evidence of the legislature's intent."  Rix v. Kinderworks Corp., 136 N.H. 548, 551 (1992); see Appeal of Weaver, 150 N.H. 254, 256 (2003) ("The title of a statute is significant when considered in connection with ambiguities inherent in its language." (quotation and ellipsis omitted)).  Nevertheless, in this case, the statute's title

4

does not persuade us to adopt the petitioner's interpretation, as other interpretive tools lead us to conclude that the Board's construction is the correct one.

In support of its interpretation of RSA 100-A:27, the Board invokes "the longstanding practice of NHRS without any legislative intervention to the contrary." See New Hampshire Retail Grocers Ass'n v. State Tax Comm'n, 113 N.H. 511, 514 (1973). The hearing examiner found:

> The Board of Trustees has consistently read the second sentence in RSA 100-A:27 as granting it the authority to correct an error in the record regardless of how the error occurred, and without any allegation of fraud on the part of the member/retiree. The Board has previously rejected the argument that the statute applies only when the error resulted from fraud.

The petitioner does not challenge this finding. See Bovaird, 166 N.H. at 762 (noting that petitioner did not dispute agency's allegation that it had always interpreted a statutory provision in a particular way).

"It is a well established principle of statutory construction that a longstanding practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to the legislative intent." New Hampshire Retail Grocers Ass'n, 113 N.H. at 514. Thus, the Board's longstanding interpretation of RSA 100-A:27 in the manner it advances here, without legislative interference, is evidence that its interpretation is correct. See Bovaird, 166 N.H. at 761-62.

The Board's interpretation is also supported when we construe all parts of the statute together and read RSA 100-A:27 within the context of RSA chapter 100-A as a whole. See Petition of Eskeland, 166 N.H. at 558. "Under RSA chapter 100-A, [NHRS] provides benefits for service retirement, disability retirement and accidental death to eligible members and beneficiaries." N.H. Retirement System v. Sununu, 126 N.H. 104, 107 (1985). NHRS' funds "are held in trust for the purpose of paying these benefits." Id. (quotation omitted); see RSA 100-A:2 (2013). "Under the common law of trusts, the [Board] owes [NHRS'] members and beneficiaries a fiduciary obligation to manage [NHRS] for the benefit of its members and beneficiaries." N.H. Retirement System v. Sununu, 126 N.H. at 109. We have recognized that the Board "has an important interest in properly administering RSA chapter 100-A and faithfully discharging its fiduciary duties in the interest of all participants and beneficiaries." Petition of Concord Teachers, 158 N.H. 529, 538-39 (2009) (emphasis added) (citation omitted) (addressing equal protection challenge).

Overpayment to a beneficiary implicates the Board's fiduciary duties, regardless of whether the overpayment is the result of fraud or an innocent mistake. In Reynolds v. Bethlehem Steel Corp., 619 F. Supp. 919 (D. Md. 1984), for instance, the court rejected a retiree's argument that the plan administrator's "unilateral rescission of its initial, erroneous approval of the lump sum payments [to the retiree] was per se arbitrary and capricious" when the original approval was a "clerical error" and contrary to the terms of the plan. Reynolds, 619 F. Supp. at 924. The court noted that "[f]ailure to correct the error would have been a breach of the General Pension Board's fiduciary duty to administer The Plan according to its terms." Id. at 924-25. Accordingly, construing RSA 100-A:27 together with provisions in the statute imposing fiduciary duties on the Board supports the Board's interpretation of RSA 100-A:27. See, e.g., RSA 100-A:2, :15, I (2013).

For the reasons stated above, we conclude that the interpretation of RSA 100-A:27 advanced by the Board is correct: the second sentence in RSA 100-A:27 authorizes the Board to correct any error in its records that would "result in any member or beneficiary receiving from the system more or less than he would have been entitled to receive had the records been correct," regardless of whether the error resulted from an act punishable under the first sentence of the statute. RSA 100-A:27. Accordingly, we uphold the Board's determination on this issue.

To the extent that the petitioner contends the original termination of the survivorship benefit in 2016 was correct, we disagree. Under RSA 100-A:13, II(a)(1), as amended in 2016, a retired member who had previously elected one of the optional allowances under RSA 100-A:13, III and named as the beneficiary "the retiree's spouse at the time of such election" may later terminate that election "upon the issuance of a divorce decree and subsequent remarriage of the former spouse, or in accordance with the terms of the final divorce decree or final settlement agreement which provides that the former spouse shall renounce any claim to a retirement allowance under RSA 100-A." RSA 100-A:13, II(a)(1). The hearings examiner found, and the petitioner does not dispute, that there was no allegation that the intervenor had remarried. Accordingly, the validity of the petitioner's 2016 termination turns upon whether the petitioner's and intervenor's final divorce decree provides that the intervenor "shall renounce any claim to a retirement allowance under RSA 100-A." Id.

Subparagraph 14.a of the divorce decree provides that the petitioner "is awarded . . . [certain retirement accounts] and his New Hampshire pension, free and clear of any claim of [the intervenor]." Subparagraph 14.b is a parallel provision awarding the intervenor her pension and retirement accounts free and clear of any claims of the petitioner. Subparagraph 14.c clarifies, however:

Nothing in this paragraph shall be construed to be a voluntary surrender by either party of any rights, including any survivorship benefits, which he or she may have under the terms or elections of either party's pension plan(s). Further, nothing in this paragraph shall be construed to constrain either party from exercising any rights, including the revocation of any survivorship benefit elections, which he or she may have under the terms or elections of either party's pension plan(s).

"The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court de novo." Estate of Frederick v. Frederick, 141 N.H. 530, 531 (1996). Under subparagraphs 14.a and 14.b, the petitioner and the intervenor each retain all rights to their pensions, free and clear of any claims of the other, during their lives, but, under subparagraph 14.c, neither voluntarily renounces his or her survivorship benefits in the other's pension. Subparagraph 14.c also allows either former spouse to exercise a right to revoke "any survivorship benefit elections, which he or she may have under the terms or elections of either party's pension plan(s)." As the Board argues, however, this latter right "is inapplicable to Petitioner's appeal." RSA 100-A:13, II(a)(1) does not give the petitioner a unilateral right to revoke his election of a spousal survivorship benefit; absent his former spouse's remarriage, he may terminate such an election only if his divorce decree "provides that the former spouse shall renounce any claim to a retirement allowance under RSA 100-A." RSA 100-A:13, II(a)(1) (emphasis added). Paragraph 14 of the divorce decree does not require the intervenor to renounce her claim to a survivorship benefit. Accordingly, the petitioner cannot terminate that benefit under RSA 100-A:13, II(a)(1) and the 2016 termination by NHRS staff was therefore erroneous.

Finally, in his petition for writ of certiorari, the petitioner challenged the denial of "his right to an evidentiary hearing by the NHRS Hearings Officer." In his brief, however, the petitioner states that "[a]n evidentiary hearing is a moot point now that Petitioner's appeal has reached the level of the New Hampshire Supreme Court" and he does not otherwise brief the issue. Under these circumstances, we deem this issue waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7