NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-669


PROFESSIONAL FIRE FIGHTERS OF NEW HAMPSHIRE & a.

v.

STATE OF NEW HAMPSHIRE & a.

Argued: May 15, 2014
Opinion Issued: December 10, 2014

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Andru H. Volinsky, Christopher G. Aslin, and Talesha L. Caynon on the brief, and Mr. Volinsky orally), Molan, Milner & Krupski, PLLC, of Concord (Glenn R. Milner on the brief), Stember Feinstein Doyle Payne & Kravec, LLC, of Pittsburgh, Pennsylvania (William T. Payne and Stephen M. Pincus on the brief), and Gottesman & Hollis, PA, of Nashua (David M. Gottesman on the brief), for the plaintiffs and intervenors.


Joseph A. Foster, attorney general (Richard W. Head, associate attorney general, on the brief and orally), for the State.

Getman, Schulthess & Steere, PA, of Manchester (Andrew R. Schulman on the brief), for New Hampshire Retirement System, as amicus curiae.

Cordell A. Johnston, of Concord, for New Hampshire Municipal Association, Betsy B. Miller, of Concord, for New Hampshire Association of Counties, and Barrett M. Christina, of Concord, for New Hampshire School Boards Association, by brief, as amici curiae.

DALIANIS, C.J.  The State appeals the Superior Court's (McNamara, J.) ruling that legislative changes increasing the contribution rates paid by members of the New Hampshire Retirement System violate the Contract Clauses of the New Hampshire and United States Constitutions.  The plaintiffs and the intervenors cross-appeal the court's ruling that members' rights to retirement benefits do not vest until they accrue ten years of creditable service.  For reasons set forth below, we reverse the court's contract clause ruling and remand.  Accordingly, we need not address the issue raised in the cross-appeal.

The following undisputed facts are supported by the record.  In 2011, the legislature amended RSA 100-A:16, I(a) by increasing the following contribution rates for New Hampshire Retirement System (NHRS) members:  for Group I members the rate increased from 5 percent to 7 percent; for Group II permanent fire fighter members the rate increased from 9.3 percent to 11.80 percent; and for Group II permanent police members the rate increased from 9.3 percent to 11.55 percent.  Laws 2011, 224:172; see RSA 100-A:16, I(a) (Supp. 2010) (amended 2011).  In June 2011, the Professional Fire Fighters of New Hampshire, the New Hampshire Police Association, the National Education Association – New Hampshire, and the State Employees Association of New Hampshire – SEIU Local 1984 filed a petition for declaratory and injunctive relief challenging the constitutionality of the changes to the statute.  The petition was twice amended to add six individual plaintiffs.  In addition to claims against the State, the petition included a claim against the Commissioner of the New Hampshire Department of Administrative Services.  However, the plaintiffs subsequently filed a voluntary nonsuit without prejudice with respect to such claim.  Accordingly, the only defendant in this appeal is the State.

The petition alleged, among other things, that "[m]embers become vested in their NHRS benefits upon commencement of permanent employee status" and that "upon vesting, their contribution rates may not be increased without a commensurate benefit."  (Quotation omitted.)  The plaintiffs argued that the legislative change to RSA 100-A:16, I(a) "substantially impairs the members'

rights" and that "[t]he substantial impairment is neither reasonable nor necessary to serve an important public interest," thereby violating the Contract Clauses of the New Hampshire and Federal Constitutions. See N.H. CONST. pt. I, art. 23; U.S. CONST. art. 1, § 10. The State moved to dismiss, arguing that: there is no contract clause violation because RSA chapter 100-A does not constitute a contract between the parties; even if RSA chapter 100-A includes sections that give rise to a contract, there is no contract right to a permanent, fixed employee contribution rate; and even if the statute includes sections that give rise to a contract, the contract is not formed until the employee "vests," as defined in RSA 100-A:10 (2013).

The trial court dismissed the four non-individual plaintiffs for lack of standing, but allowed them to proceed as intervenors. The State does not challenge this ruling on appeal. Thus, we assume, without deciding, that the non-individual plaintiffs have standing to be intervenors. See G2003B, LLC v. Town of Weare, 153 N.H. 725, 727 (2006). The trial court denied the motion to dismiss as to the individual plaintiffs, finding that, pursuant to RSA 100-A:10, I, "the legislature intended that public employees' pension rights . . . vest after ten years of creditable service, and that after vesting the State is contractually bound to honor its obligation to provide a pension without any modification or decrease in benefits." The court also found that the increase in members' contribution rates constitutes a substantial impairment "because it requires employees, who have already met the requisite service and age requirements, to pay additional amounts . . . without receiving additional benefit." Accordingly, the court concluded that "RSA 100-A creates a contract between vested employees and the State, and the . . . modification in the employee contribution rate is a substantial modification of that contract, in violation of both the United States and New Hampshire Constitutions with respect to employees who have met the service requirements of RSA 100-A:10."

The parties thereafter filed cross-motions for summary judgment. The State argued that "[g]iven the historical changes to the employee contribution rates, combined with the absence of any language reflecting constitutional contractual rights associated with employee contribution rates," the legislature had not "evinced a clear intent to create contractual rights binding on successive legislatures against modification of [such] rates." The State asserted that "[e]ven if RSA 100-A creates a contractual interest upon vesting, its contractual obligation is to provide a pension as it exists . . . on a certain day, but does not prohibit changes to the system going forward," and that "[t]he legislature should not . . . be prohibited from changing that retirement system going forward, while at the same time guaranteeing as unchanged the pension benefit that has accrued up until that point." The plaintiffs and intervenors (collectively, the plaintiffs) argued that, based upon Cloutier v. State, 163 N.H. 445 (2012), the trial court should "revisit its decision as to when vesting occurs . . ., and find that vesting occurs when an NHRS member obtains permanent employment status."

3

The trial court denied the plaintiffs' cross-motion, affirming its earlier ruling that benefits vest after ten years of creditable service. The court rejected the plaintiffs' reliance upon Cloutier, noting that Cloutier was "based on an interpretation of a wholly different statute – RSA chapter 100-C – and specifically, other pertinent language," including that the judges subject to that statute were entitled to retirement benefits as "additional compensation for services rendered and to be rendered." (Quotation omitted.) The trial court also denied the State's cross-motion, rejecting its argument that the legislature had not demonstrated an unmistakable intent to bind future legislatures to particular contribution rates. Because only three of the six individual plaintiffs had served their ten years of creditable service prior to the effective date of the 2011 statutory changes, the trial court granted summary judgment for the three "vested" plaintiffs and denied summary judgment for the other individual plaintiffs.

On appeal, the State argues, among other things, that the trial court erred by ruling that NHRS members have a contractual right to a fixed contribution rate. We agree.

In reviewing the trial court's grant of summary judgment, we consider all evidence presented in the record, and all inferences properly drawn therefrom, in the light most favorable to the nonmoving party. See City of Concord v. State of N.H., 164 N.H. 130, 133 (2012). We will affirm the grant of summary judgment only if our review of that evidence discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Antosz v. Allain, 163 N.H. 298, 299 (2012). We review the trial court's application of the law to the facts de novo. Id.

Whether or not a statute is constitutional is a question of law, which we review de novo. Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 640 (2010).

> The party challenging a statute's constitutionality bears the burden of proof. The constitutionality of an act passed by the coordinate branch of the government is to be presumed. It will not be declared to be invalid except upon inescapable grounds; and the operation under it of another department of the state government will not be interfered with until the matter has received full and deliberate consideration.

Id. (quotations, citations and brackets omitted). "When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State, 161 N.H. 49, 53 (2010).

The contract clause of the United States Constitution provides: "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. CONST. art. I, § 10. Part I, Article 23 of the New Hampshire Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." N.H. CONST. pt. I, art. 23. Although Part I, Article 23 "does not expressly reference existing contracts . . ., we have held that its proscription duplicates the protections found in the contract clause of the United States Constitution." State v. Fournier, 158 N.H. 214, 221 (2009) (quotation omitted). "We . . . understand article I, section 10 [of the Federal Constitution] and part I, article 23 [of the State Constitution] to offer equivalent protections where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract." Opinion of the Justices (Furlough), 135 N.H. 625, 630 (1992). Thus, "every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective" within the meaning of Part I, Article 23. Tuttle, 159 N.H. at 641 (quotation omitted).

When evaluating a contract clause claim, a court must first determine "whether a change in state law has resulted in the substantial impairment of a contractual relationship." Parker v. Wakelin, 123 F.3d 1, 4-5 (1st Cir. 1997) (quotations omitted). This inquiry, in turn, has "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Id. at 5 (quotation omitted). To survive a contract clause challenge, a legislative enactment that constitutes a substantial impairment of a contractual relationship "must have a significant and legitimate public purpose." Energy Reserves Group v. Kansas Power & Light, 459 U.S. 400, 411 (1983).

"A party alleging that contractual rights arose from a statutory enactment faces a heavy burden." Maine Ass'n of Retirees v. Board of Trustees, 758 F.3d 23, 29 (1st Cir. 2014). "[W]here a public contract allegedly arises out of statutory language, the hurdle under the first component of the first part of the test – proving that a contractual relationship exists – is necessarily higher, since normally state statutory enactments do not of their own force create a contract with those whom the statute benefits." Parella v. R.I. Employees' Retirement System, 173 F.3d 46, 60 (1st Cir. 1999) (quotation omitted). As the United States Supreme Court has explained:

> [T]he principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.

5

National R. Passenger Corp. v. A. T. & S. F. R. Co., 470 U.S. 451, 466 (1985) (citation omitted).  Thus, "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."  Id. at 465-66 (quotation omitted).

"This threshold requirement for the recognition of public contracts has been referred to as the 'unmistakability doctrine.'"  Parker, 123 F.3d at 5.  The doctrine "serve[s] the dual purposes of limiting contractual incursions on a State's sovereign powers and of avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power."  United States v. Winstar Corp., 518 U.S. 839, 875 (1996) (plurality opinion).  Because we have consistently held that the proscription contained in Part I, Article 23 "duplicates the protections found in the contract clause of the United States Constitution," Opinion of the Justices (Furlough), 135 N.H. at 630, we here adopt the unmistakability doctrine.  See Tuttle, 159 N.H. at 641 (Federal and State Contract Clauses offer "equivalent protections" (quotation omitted)).  We first address the State's argument under the State Constitution and rely upon federal law only to aid our analysis.  See State v. Ball, 124 N.H. 226, 231-33 (1983).

"[T]he unmistakability doctrine mandates that we determine whether the challenged legislative enactment evinces the clear intent of the state to be bound to particular contractual obligations."  Parker, 123 F.3d at 7.  "When reviewing a particular enactment, therefore, we must suspend judgment and proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation."  Id. at 7-8 (quotation omitted).  The first step is to examine the statutory language itself.  National, 470 U.S. at 466.

Prior to the 2011 amendments, RSA 100-A:16, I(a) provided:

The member annuity savings fund shall be a fund in which shall be accumulated the contributions deducted from the compensation of members to provide for their member annuities together with any amounts transferred thereto from a similar fund under one or more of the predecessor systems.  Such contribution shall be, for each member, dependent upon the member's employment classification at the rate determined in accordance with the following table:

Employees of employers other than the state                5.00

Employees of the state hired on or before June 30, 2009    5.00

| | |
|---|---|
| Employees of the state hired after June 30, 2009 | 7.00 |
| Teachers | 5.00 |
| Permanent Policemen | 9.30 |
| Permanent Firemen | 9.30 |

RSA 100-A:16, I(a).

The trial court determined that pursuant to RSA 100-A:10, I, "the legislature intended that public employees' pension rights . . . vest after ten years of creditable service," and, therefore, that the legislature's "modification in the employee contribution rate is a substantial modification of that contract." However, the statutory amendment at issue – RSA 100-A:16, I(a) – does not retroactively affect NHRS member contribution rates. The narrow question before us is whether, by enacting RSA 100-A:16, I(a), the legislature unmistakably intended to establish NHRS member contribution rates as a contractual right that cannot be modified. We hold that it did not.

As the State points out, courts in other jurisdictions have concluded that a legislature is not constitutionally prohibited from increasing member contributions to a state retirement system. For example, the Michigan Supreme Court concluded that "an employee contribution rate increase of 5% without a corresponding increase in benefits" would not violate that state's constitution. In re Enrolled Senate Bill 1269, 209 N.W.2d 200, 201-02 (Mich. 1973). The court stated that although "the legislature cannot diminish or impair accrued financial benefits, . . . we think it may properly attach new conditions for earning financial benefits which have not yet accrued." Id. at 202-03.

Similarly, the Florida Supreme Court, recognizing that the legislature has authority "to amend a retirement plan prospectively, so long as any benefits tied to service performed prior to the amendment date are not lost or impaired," held that legislative amendments to the Florida Retirement System increasing employee contributions from zero to three percent "have not impaired any statutorily created contract rights." Scott v. Williams, 107 So. 3d 379, 389 (Fla. 2013); see also Taylor v. City of Gadsden, 958 F. Supp. 2d 1287, 1325 (N.D. Ala. 2013) ("there is no indication that the legislature . . . unmistakably has bound itself to never changing the contribution rate"), aff'd, 767 F.3d 1124 (11th Cir. 2014).

We hold that there is no indication that in enacting RSA 100-A:16 the legislature unmistakably intended to bind itself from prospectively changing the rate of NHRS member contributions to the retirement system. Because the Federal Constitution affords the plaintiffs no greater protection than does the

7

State Constitution in these circumstances, we reach the same conclusion under the Federal Constitution as we do under the State Constitution.  See Maine Ass'n of Retirees, 758 F.3d at 29.  Accordingly, we reverse the trial court's ruling that the 2011 amendment to RSA 100-A:16, I(a) violated the Contract Clauses of the State and Federal Constitutions.

Reversed and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.