NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2022-0651
Citation: City of Manchester v. Bellenoit, 2024 N.H. 28


CITY OF MANCHESTER

v.

ROBERT BELLENOIT & a.

Argued: September 19, 2023
Opinion Issued: May 30, 2024

Office of the City Solicitor, of Manchester (Gregory T. Muller on the brief and orally), for the plaintiff.


McDowell & Morrissette, P.A., of Manchester (Mark D. Morrissette on the brief and orally), for the defendants.

DONOVAN, J.

[¶1] The defendants, Robert Bellenoit, Richard Brown, Gregory Ditullio, and Jacob Tyler, appeal an order from the Superior Court (Messer, J.) granting the City of Manchester's (City) motions for summary judgment and denying the defendants' motions for summary judgment. On appeal, the defendants argue that the trial court erred in determining that: (1) section 33.064(B)(2) of the

Manchester City Ordinance (MCO) effective prior to a 2008 amendment (hereinafter, section 33.064(B)(2) (pre-2008 amendment)) did not create a vested contractual right; and (2) section 33.064(B) of the MCO as amended in 2008 (hereinafter, section 33.064(B) (post-2008 amendment)) applied to the defendants.  We conclude that: (1) section 33.064(B)(2) (pre-2008 amendment) did not create a vested contractual right; and (2) pursuant to the collective bargaining agreements (CBA) in effect when the defendants used their sick leave, section 33.064(B) (post-2008 amendment) applied to them.  Accordingly, we affirm.

## I.  Facts

[¶2] The following facts are either undisputed or supported by the record. The defendants are police officers, either sergeants or patrolmen, employed by the City of Manchester.  Each defendant is a member of one of two collective bargaining units (CBU) — the Manchester Association of Police Supervisors (MAPS) for sergeants or the Manchester Police Patrolmen's Association (MPPA) for patrolmen — that periodically enter into and renew CBAs with the City. Each defendant was hired and became a permanent employee prior to 2008. Between 2015 and 2018, each defendant was injured in the scope of his employment and filed a workers' compensation claim with the City.  Each defendant's claim was either denied and subsequently appealed, or delayed pending determination of eligibility.  Between 2017 and 2018, while each claim was in the process of being resolved, the City paid each defendant accrued sick leave benefits.  Ultimately, each defendant was deemed eligible for workers' compensation benefits and received payments from the City in the same amount that each defendant had previously received from the City in the form of sick leave benefits.

[¶3] In 2019, the City brought four separate actions in plea of debt demanding that, pursuant to section 33.064(B) (post-2008 amendment), each defendant repay the sick leave benefits that he received while his eligibility for workers' compensation was pending or being appealed.  The City acknowledged that upon repayment of the sick leave benefits, the City would restore the sick time that each officer used.  The defendants argued that pursuant to section 33.064(B)(2) (pre-2008 amendment), they have a vested right to restoration of their sick leave benefits without the requirement of repayment.  In each case, the parties filed cross-motions for summary judgment and corresponding objections.  Because each case raised the same legal question, the motions were consolidated for resolution.  In June 2022, the superior court held a hearing on the motions.

[¶4] In September 2022, the court issued a written order granting the City's motions for summary judgment and denying the defendants' motions for summary judgment.  The court ruled that because "at the time of their injuries, each Defendant was subject to a CBA negotiated after the 2008 amendment

2

took effect," section 33.064(B) (post-2008 amendment) applied to them. The court also ruled that even if the negotiated CBAs "only changed the benefits accrued after the date of the new CBA," application of section 33.064(B) (post-2008 amendment) to the defendants did not constitute an "unconstitutional retroactive application of the law." The court determined that the defendants do not have a vested right to restoration of sick leave benefits without the requirement of repayment pursuant to section 33.064(B)(2) (pre-2008 amendment). The court distinguished the case at hand from Gilman v. County of Cheshire, 126 N.H. 445 (1985), reasoning that in this case, the defendants were "not subject to a unilateral change in compensation" and that they could not have relied on the restoration of sick leave credit after receipt of workers' compensation without repayment because section 33.064(B)(2) (pre-2008 amendment) was silent as to repayment.

[¶5] The court also considered the "unmistakability doctrine," which requires that "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." Am. Fed'n of Teachers — N.H. v. State of N.H., 167 N.H. 294, 301 (2015) (quotation omitted). The trial court reasoned that, in this case, section 33.064(B)(2) (pre-2008 amendment) did not discuss repayment and, in addition, there was "no stated policy that sick leave benefits would be restored without repayment." Consequently, the court explained, "the City's silence on the repayment issue in the pre-2008 ordinance cannot be construed as an intention on the City's part to be forever bound to the concept of restoration of sick benefits without repayment." The defendants filed a motion to reconsider, which the court denied. This appeal followed.

## II. Analysis

[¶6] The defendants argue on appeal that the trial court erred in granting the City's motions for summary judgment and denying their motions for summary judgment. Specifically, the defendants argue that the court erred in: (1) determining that the defendants did not have a vested right in the restoration of sick leave credit without the requirement of repayment pursuant to section 33.064(B)(2) (pre-2008 amendment); and (2) applying section 33.064(B) (post-2008 amendment) to them. When reviewing a trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Am. Fed'n of Teachers — N.H., 167 N.H. at 300 (quotation omitted). We review the trial court's application of the law to the facts de novo. Id.

[¶7] This case requires that we determine whether the pre- or post-2008 version of section 33.064 of the MCO applies to the defendants. Prior to 2008,

section 33.064(B)(2) stated that "[p]ending determination of compensation eligibility, the employee may receive sick leave benefits. On a determination of eligibility for compensation benefits, sick leave credit shall be restored." In Stankiewicz v. City of Manchester, 156 N.H. 587, 592-93 (2007), we were asked to interpret section 33.064(B)(2) (pre-2008 amendment) to determine whether the provision required an employee to reimburse the City prior to restoration of the employee's sick leave credit. We concluded that "the plain language of the ordinance requires the City to restore the plaintiff's sick leave credit, but does not require the plaintiff to repay the City." Stankiewicz, 156 N.H. at 593. We also stated that the City was "free to amend" its ordinances "as it sees fit" in the event that it disagreed with our interpretation. Id. at 593-94. In 2008, the City amended section 33.064(B) to read: "Pending determination of workers compensation eligibility, the employee may receive sick leave benefits. On a determination that the employee is eligible for workers compensation benefits, the employee shall repay to the city all sick leave benefits the employee has received. Upon repayment sick leave credit shall be restored." (Emphasis added.)

A. Vested Right

[¶8] When determining which version of section 33.064(B) applies to the defendants, we first consider whether section 33.064(B)(2) (pre-2008 amendment) created a vested right. We start here as this determination affects whether the negotiated CBAs, to the extent that they incorporate section 33.064(B) (post-2008 amendment), apply to the defendants. See 20 Richard A. Lord, Williston on Contracts § 55:27, at 121-22, 124-25 (4th ed. 2016) (explaining that "[a]s a general rule, contractual obligations cease, in the ordinary course, on the termination of the collective bargaining agreement," but that in some cases, certain vested rights may "survive the termination of the agreement").

[¶9] The defendants argue that because they attained permanent employee status prior to the 2008 amendment, they have a vested right to the benefit set forth in section 33.064(B)(2) (pre-2008 amendment). The City disagrees, arguing that "under the 'unmistakability doctrine' the Superior Court correctly concluded that the [defendants] did not have a vested right to non-payment" pursuant to section 33.064(B)(2) (pre-2008 amendment). We agree with the City.

[¶10] Whether section 33.064(B)(2) (pre-2008 amendment) established a vested right that cannot be subsequently impaired or abrogated is a question that implicates Part I, Article 23 of the State Constitution. See Am. Fed'n of Teachers — N.H., 167 N.H. at 300-01; see also Opinion of the Justices (Furlough), 135 N.H. 625, 630 (1992) ("We . . . understand article I, section 10 [of the Federal Constitution] and part I, article 23 [of the State Constitution] to offer equivalent protections where a law impairs a contract, or where a law

4

abrogates an earlier statute that is itself a contract."). We review the constitutionality of a local ordinance de novo. State v. Lilley, 171 N.H. 766, 771 (2019); see also Am. Fed'n of Teachers — N.H., 167 N.H. at 300.

[¶11] Part I, Article 23 of the New Hampshire Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." When interpreting this provision, we have held that "every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective within the meaning of Part I, Article 23." Am. Fed'n of Teachers — N.H., 167 N.H. at 300-01 (quotation omitted). Thus, "if application of a new law would adversely affect an individual's substantive rights, it may not be applied retroactively." Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 641 (2010) (brackets and quotation omitted).

[¶12] "When evaluating a contract clause claim, a court must first determine whether a change in state law has resulted in the substantial impairment of a contractual relationship." Am. Fed'n of Teachers — N.H., 167 N.H. at 301 (quotation omitted). "This inquiry, in turn, has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Id. (quotation omitted). "To survive a contract clause challenge, a legislative enactment that constitutes a substantial impairment of a contractual relationship must have a significant and legitimate public purpose." Id. (quotation omitted).

[¶13] We adopted the "unmistakability doctrine" based upon our recognition that the "'principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.'" Prof. Fire Fighters of N.H. v. State of N.H., 167 N.H. 188, 194 (2014) (quoting National R. Passenger Corp. v. A. T. & S. F. R. Co., 470 U.S. 451, 466 (1985)); see also Am. Fed'n of Teachers — N.H., 167 N.H. at 301. This doctrine "mandates that we determine whether the challenged legislative enactment evinces the clear intent of the state to be bound to particular contractual obligations." Am. Fed'n of Teachers — N.H., 167 N.H. at 301 (quotation omitted). "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.'" Id. (quoting National R. Passenger Corp., 470 U.S. at 466). Thus, "'absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" Id. (quoting National R. Passenger Corp., 470 U.S. at

465-66). Although here we are considering the constitutionality of an ordinance rather than a statute, we will apply the unmistakability doctrine to determine whether the ordinance violates the contract clause of the New Hampshire Constitution. See Thayer v. Town of Tilton, 151 N.H. 483, 490-91 (2004) (considering whether an ordinance is unconstitutionally retrospective under Part I, Article 23 of the State Constitution); cf. Frazier v. City of Chattanooga, Tennessee, 841 F.3d 433, 436 (6th Cir. 2016) (applying the unmistakability doctrine when considering whether a city code violates the United States Contract Clause).

[¶14] "When reviewing a particular enactment, . . . we . . . proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.'" Am. Fed'n of Teachers — N.H., 167 N.H. at 301 (quoting Parker v. Wakelin, 123 F.3d 1, 7-8 (1st Cir. 1997)). We begin by examining the ordinance's language itself and closely analyze the provisions of the ordinance at issue. See id. Accordingly, we start by considering the language of section 33.064(B)(2) (pre-2008 amendment), as it is the primary ordinance in question. See Prof. Fire Fighters of N.H., 167 N.H. at 194.

[¶15] Section 33.064(B)(2) (pre-2008 amendment) states that "[p]ending determination of compensation eligibility, the employee may receive sick leave benefits. On a determination of eligibility for compensation benefits, sick leave credit shall be restored." The ordinance plainly "requires the City to restore the plaintiff's sick leave credit, but does not require the plaintiff to repay the City." Stankiewicz, 156 N.H. at 593. This observation, however, does not conclusively resolve the question as to whether the City clearly intended to be bound by section 33.064(B)(2) (pre-2008 amendment) as a contractual obligation. See Am. Fed'n of Teachers — N.H., 167 N.H. at 301. Indeed, we agree with the trial court that "the City's silence on the repayment issue in the pre-2008 ordinance cannot be construed as an intention on the City's part to be forever bound to the concept of restoration of sick benefits without repayment." See 6 Eugene McQuillin, The Law of Municipal Corporations § 20:48, at 250-51 (3d ed. rev. 2023) ("If possible, the [enacting body's] intention should be ascertained from the words used in the ordinance, considering the language honestly and faithfully to determine its plain and rational meaning, and to promote its object and manifest purpose.").

[¶16] The defendants nonetheless argue that section 10.17(B) of the MCO evinces the City's clear intent to be contractually bound to section 33.064(B)(2) (pre-2008 amendment). Section 10.17(B) provides:

> No suit, proceedings, right, fine, forfeiture, or penalty instituted, created, given, secured, or accrued under any ordinance previous to its repeal shall in any way be affected, released, or discharged, but may be

6

prosecuted, enjoyed, and recovered as fully as if the ordinance had continued in force <u>unless it is otherwise expressly provided</u>.

(Emphasis added.)  Specifically, the defendants argue that "where the City's enactment of Ordinance § 10.17 makes it clear that it intends to be bound to its contractual obligations, the City cannot eliminate a clear contractual compensation benefit with regard to those employees who had a vested interest in the benefit."  Although the City recognizes that section 10.17 states a "general rule for the MCO," the City points to section 33.023 of the MCO as "an express exception to that general rule" and argues that "[t]o the extent that these two provisions contradict each other, MCO §33.023, being the more specific rule to the circumstances at issue here is the controlling ordinance."

[¶17] Section 33.023 provides that "[n]one of the provisions of §§ 33.020 through 33.082 of this chapter shall amend or modify any existing legal and binding contract between the city and employees' groups unless or until such contracts are renegotiated to conform with the provisions of §§ 33.020 through 33.082 of this chapter."  The City argues that section 33.023 demonstrates that "the City never intended to be bound to a particular contractual obligation or grant[] a vested right" under section 33.064(B)(2) (pre-2008 amendment) because section 33.023 "establishes that the City intended the provisions of MCO §33.020 through 33.082 . . . to be subject to subsequent amendment and repeal."  The defendants counter that section 33.023 is a "historical preservation" provision that provides that when sections 33.020 through 33.082 were adopted, those provisions would not interfere with prior contracts unless or until such contracts were renegotiated.

[¶18] Although we agree with the defendants' interpretation of section 33.023, their reading is too narrow.  Given that the City cannot "simply alter or abandon valid contracts with its employees' groups by adopting new ordinances," <u>Stankiewicz</u>, 156 N.H. at 590, section 33.023 explains that when sections 33.020 through 33.082 are amended or modified, such changes will not interfere with any existing contracts unless or until such contracts are negotiated to conform with sections 33.020 through 33.082.  Section 33.023 thus contemplates that sections 33.020 through 33.082 will be subject to amendment and modification, demonstrating, as the City states, "that this ordinance scheme is clearly a statement of policy."  See <u>Prof. Fire Fighters of N.H.</u>, 167 N.H. at 194 ("'Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.'" (quoting <u>National R. Passenger Corp.</u>, 470 U.S. at 466)).

[¶19] Thus, we agree with the City that section 33.023 provides an exception to the general rule set forth in section 10.17(B) given that it expressly provides for amendment and modification of sections 33.020 through 33.082.

Our conclusion aligns with the fact that "'[t]he principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.'" Id. (quoting National R. Passenger Corp., 470 U.S. at 466)); see also Gilman, 126 N.H. at 450 ("[T]his opinion should not be read to preclude employers from modifying the terms of employment. Rather, this opinion merely limits the ability of an employer to modify rights which have vested under the previous terms of employment."). Accordingly, in applying the unmistakability doctrine, we conclude that, section 33.064(B)(2) (pre-2008 amendment) does not create a vested right.

[¶20] The defendants nevertheless argue that our decision in Gilman makes clear that section 33.064(B)(2) (pre-2008 amendment) created a vested right. At issue in Gilman was whether, in calculating the payout value of an employee's accrued sick leave, the employer must use the higher rate set forth in a 1980 policy in effect when the employee accrued most of his sick leave, or whether the employer could apply the amended 1982 policy in effect when the employee sought payment, which would result in a reduced payout to the employee. Gilman, 126 N.H. at 446-47. We concluded that the employee had a vested right to the sick leave benefits set forth in the 1980 policy because "the employer could not impair its obligation to pay those benefits by changing its sick leave policy after the compensation was earned so as to divest the rights of those already benefitting from it." Id. at 448-49.

[¶21] The defendants, however, mischaracterize the sick leave benefits discussed in Gilman as "the same benefits that are at issue in the instant appeal." At issue in Gilman was the "payment for certain accumulated, but unused, sick leave from a public employer." Id. at 446. In contrast, at issue in the case before us is whether, upon determination that an employee is eligible for workers' compensation, the employee is entitled to the restoration of sick leave credit without being obligated to repay the City for the sick leave benefits previously received. See Stankiewicz, 156 N.H. at 593. Thus, although both Gilman and this case involve sick leave, the benefit at issue in Gilman is substantially different than the benefit at issue in the case at hand, and our holding in Gilman therefore does not control whether section 33.064(B)(2) (pre-2008 amendment) created a vested right. See Gilman, 126 N.H. at 447; Am. Fed'n of Teachers — N.H., 167 N.H. at 304 (explaining that the circumstances of the party claiming a contractual right "'by their nature, will vary from case to case. Particular plaintiffs bringing particular Contract Clause claims . . . may find themselves in markedly different circumstances'" (quoting Parella v. R.I. Employees' Retirement System, 173 F.3d 46, 61 (1st Cir. 1999))).

[¶22] Indeed, we explained in Gilman that "[a] vested right cannot be contingent nor a mere expectance of a future benefit." Gilman, 126 N.H. at 448. We held, however, that the employee's right to payment for accumulated, but unused sick leave was not "a mere expectancy of a future benefit" because the sick leave benefits were part of the employee's compensation for services

8

already rendered, the "payment for which was to be made at a future date." Id. at 448-49. In contrast, the benefit set forth in section 33.064(B)(2) (pre-2008 amendment) was contingent on an officer suffering an employment-related injury and then using sick leave benefits during the pendency of the officer's workers' compensation claim that resulted in a determination of eligibility. Here, the defendants did not suffer an injury, use their sick leave, or experience a delayed workers' compensation determination until after section 33.064 was amended and the relevant CBAs were negotiated to incorporate section 33.064(B) (post-2008 amendment). Thus, the defendants never earned the benefit set forth in section 33.064(B)(2) (pre-2008 amendment).

[¶23] We also agree with the superior court that unlike the employee in Gilman, the defendants here "were not subject to a unilateral change in compensation," as the value of their sick leave has not changed. The defendants point to the placement of section 33.064 within "[t]he City's compensation plan [that] spans [MCO] § 33.40 through 33.064" as part of their argument that they "became vested in the compensation plan benefits" detailed in section 33.064(B)(2) (pre-2008 amendment). See id. at 449 (stating that because sick leave benefits "constitute a part of an employee's compensation, they form a part of the employment contract, and the right to receive such benefits vests at the time one becomes a governmental employee or continues in such employment"). A provision or enactment's location within an ordinance's compensation plan, however, does not, in and of itself, create a contractual right. Compare Am. Fed'n of Teachers — N.H., 167 N.H. at 297, 304-06 (holding that two provisions contained within RSA chapter 100-A, which establishes the State's pension plan, did not create vested rights), with Cloutier v. State, 163 N.H. 445, 449, 454 (2012) (holding that now-repealed statutes that provided for retirement benefits to judges created an implied-in-fact contract between the State and the judges who entered into employment when the statutes were in effect).

B. Collective Bargaining Agreements

[¶24] We next consider whether the trial court correctly determined that section 33.064(B) (post-2008 amendment) applies to the defendants. The defendants argue that section 33.064(B) (post-2008 amendment) does not apply to them because a CBA cannot defeat a vested contractual right gained by municipal law. This argument, however, is premised on the incorrect assertion that the defendants have a vested right in section 33.064(B)(2) (pre-2008 amendment) — an argument that we rejected above. The City counters that at the time of their injuries and use of sick leave, the defendants were subject to CBAs that had been negotiated following the 2008 amendment and had incorporated the amended version of section 33.064(B). The City argues that it "is seeking to enforce the law of the contracts as it existed at the time of [the] contract," and therefore, section 33.064(B) (post-2008 amendment) applies to the defendants. We agree with the City.

9

[¶25] Resolving this issue requires a review of the relevant CBAs that were negotiated following the 2008 amendment and the version of the MCO in existence when the CBAs were renewed. A CBA is a contract, and thus in reviewing a CBA, we apply the general rules of contract interpretation. Monadnock Reg'l Sch. Dist. v. Monadnock Dist. Educ. Ass'n, 173 N.H. 411, 418-19 (2020). The interpretation of both a contract and an ordinance is a question of law that we review de novo. Id.; Stankiewicz, 156 N.H. at 589.

[¶26] "The laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." Stankiewicz, 156 N.H. at 590 (quotation and brackets omitted). "Thus, when the City and any employees' groups enter into contracts, those contracts must comply with the terms of the MCO, as it is the law subsisting at the time and place of the contract's formation and performance." Id. "The City, despite its general authority to adopt ordinances for its governance, may not, however, simply alter or abandon valid contracts with its employees' groups by adopting new ordinances." Id. Therefore, section 33.023 of the MCO provides that sections 33.020 through 33.082 do not amend or modify "any existing legal and binding contract[s] . . . unless or until such contracts are renegotiated to conform with" sections 33.020 through 33.082. See id.

[¶27] Pursuant to section 33.023, section 33.064(B) (post-2008 amendment) did not "amend or modify any existing legal and binding contract between the city and employees' groups" until such contracts were negotiated following the 2008 amendment. See id. at 590. Thus, when the CBAs relevant to this case were negotiated following the 2008 amendment, they incorporated the version of the MCO in existence at that time, which included section 33.064 (post-2008 amendment), as the law of the contract.[1] See id. Each CBA expressly recognized that any portion of the agreement found to be in conflict with any City ordinance "now in effect" "will be null and void." Furthermore, assuming that MAPS and MPPA could have negotiated to retain the right set forth in section 33.064(B)(2) (pre-2008 amendment), or otherwise addressed this right in the negotiated CBAs, they did not do so. Rather, the controlling CBAs did not address section 33.064 or the issue of workers' compensation benefits and the impact that an eligibility determination has on the restoration of an officer's sick leave credits or the requirement of repayment.

---

[1] The trial court found, and the City agrees, that the specific CBAs relevant to this case were those in effect when each officer used his paid sick leave. Although the defendants argue that the use of their sick leave pending determination of workers' compensation eligibility is governed by section 33.064(B)(2) (pre-2008 amendment), they do not dispute that when they were injured and used sick leave, they were otherwise subject to the CBAs in effect at those times. Thus, given our prior conclusion that section 33.064(B)(2) (pre-2008 amendment) did not apply to the defendants, we assume the trial court's finding to be true and focus our analysis on the agreement between the City and MAPS, effective July 1, 2016 through June 30, 2019, and the agreement between the City and MPPA, effective July 1, 2016 through June 30, 2019.

10

[¶28] Accordingly, section 33.064(B) (post-2008 amendment) became the law of the contract, governing where the CBA was silent. See id. at 592 ("The CBA is silent on this issue, and the plaintiff may avail himself of the MCO, which specifically addresses his claim."). Therefore, because the defendants, at the time that they used their sick leave, were subject to CBAs that incorporated section 33.064(B) (post-2008 amendment) as the law of the contract, we conclude that section 33.064(B) (post-2008 amendment) applies to the defendants. See id. at 590-91.

## III. Conclusion

[¶29] For the foregoing reasons, we conclude that the defendants do not have a vested right to the benefits provided in section 33.064(B)(2) (pre-2008 amendment) and that section 33.064(B) (post-2008 amendment) applies to the defendants. We therefore affirm the superior court's grant of summary judgment in favor of the City and the court's denial of summary judgment for the defendants.

Affirmed.

BASSETT and HANTZ MARCONI, JJ., concurred; MACDONALD, C.J., and ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, dissented.

MACDONALD, C.J., and ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, II, dissenting.

[¶30] The City of Manchester has sued four of its police officers who were injured in the course of their duties. The City seeks repayment of sick leave benefits. Each of the officers submitted workers' compensation claims. The claims were either denied by the City and then appealed, or were otherwise delayed. Pending ultimate resolution of their claims, the officers used accrued sick leave. The four officers were ultimately awarded workers' compensation benefits.

[¶31] The City subsequently commenced debt collection actions in circuit court against each of the officers, seeking to recover sick leave time in the following amounts: Sergeant Robert Bellenoit, $12,930.63; Officer Richard Brown, $4,572.64; Officer Gregory Ditullio, $656.89; and Officer Jacob Tyler, $1,925.51.

[¶32] Each of the officers had become a permanent employee prior to 2008. They argue that provisions of the Manchester City Ordinance (MCO) in effect at that time, Section 33.064(B)(2) (pre-2008 amendment), do not require repayment to have sick leave restored. Because we conclude that section 33.064(B)(2) (pre-2008 amendment) created a vested contractual right and,

11

consequently, application of section 33.064(B) (post-2008 amendment) is unconstitutionally retrospective, we respectfully dissent.

I. Vested Right

[¶33] This case requires that we determine whether the pre- or post-2008 version of MCO section 33.064 applies to the defendants. The defendants argue that they are entitled to the restoration of their sick leave credit without the requirement of repayment pursuant to section 33.064(B)(2) (pre-2008 amendment). Specifically, they argue that because they attained permanent employee status prior to the 2008 amendment, their compensation plan benefits detailed in section 33.064(B)(2) (pre-2008 amendment) are vested. We agree.

[¶34] Whether section 33.064(B)(2) (pre-2008 amendment) establishes a vested right that cannot be subsequently impaired or abrogated is a question that is governed by Part I, Article 23 of the State Constitution. See Am. Fed'n of Teachers — N.H. v. State of N.H., 167 N.H. 294, 300-01 (2015). We review the constitutionality of a local ordinance de novo. State v. Lilley, 171 N.H. 766, 771 (2019).

[¶35] "[A]rticle I, section 10 [of the United States Constitution] and part I, article 23 [of the New Hampshire Constitution] . . . offer equivalent protections where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract." Opinion of the Justices (Furlough), 135 N.H. 625, 630 (1992) (citation omitted); see also N.H. CONST. pt. I, art. 23 ("Retrospective laws are highly injurious, oppressive and unjust. No such laws should therefore, be made . . . ."); Opinion of the Justices (Furlough), 135 N.H. at 630 (noting "retrospective law" "has been defined as follows: every statute, which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past" (quotation and citation omitted)). Because the protections under the constitutions are equivalent when applied to these circumstances, we refer to the United States and New Hampshire contracts clauses interchangeably and rely on federal cases for guidance. See Opinion of the Justices (Furlough), 135 N.H. at 630.

[¶36] As the majority correctly states, a contracts clause violation occurs when there is a substantial impairment of a contractual relationship. Am. Fed'n of Teachers — N.H., 167 N.H. at 301. Under certain circumstances, laws — here, the MCO — can be treated as a contract for contracts clause purposes. See Prof. Fire Fighters of N.H. v. State of N.H., 167 N.H. 188, 193-94 (2014).

[¶37] As the majority notes, we adopted the "unmistakability doctrine" based upon our recognition that "'the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.'" Id.

12

at 194 (brackets omitted) (quoting National R. Passenger Corp. v. A. T. & S. F. R. Co., 470 U.S. 451, 466 (1985)); see also Am. Fed'n of Teachers — N.H., 167 N.H. at 301.  This doctrine "mandates that we determine whether the challenged legislative enactment evinces the clear intent of the state to be bound to particular contractual obligations."  Am. Fed'n of Teachers — N.H., 167 N.H. at 301 (quotation omitted).  "'Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.'"  Id. (quoting National R. Passenger Corp., 470 U.S. at 466).  Thus, "'absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"  Id. (quoting National R. Passenger Corp., 470 U.S. at 465-66).

[¶38] "When reviewing a particular enactment, . . . we . . . proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.'"  Id. (quoting Parker v. Wakelin, 123 F.3d 1, 7-8 (1st Cir. 1997)).  We begin by examining the ordinance's language itself and perform a close analysis of the provision of the ordinance at issue.  See id.  Thus, we turn to the language of section 33.064(B)(2) (pre-2008 amendment).  See Prof. Fire Fighters of N.H., 167 N.H. at 194.

[¶39] As the majority notes, we previously construed the provision in Stankiewicz v. City of Manchester, 156 N.H. 587, 592-94 (2007).  Section 33.064(B)(2) (pre-2008 amendment) states that "[p]ending determination of compensation eligibility, the employee may receive sick leave benefits.  On a determination of eligibility for compensation benefits, sick leave credit shall be restored."  Notably, the provision does not address whether employees must repay the sick leave benefits that they received while their workers' compensation claims were pending prior to having their sick leave credit restored.  See Stankiewicz, 156 N.H. at 593.

[¶40] Section 33.064(B)(2) (pre-2008 amendment) provides a clear compensation benefit to qualifying public employees: the ability to use sick leave benefits pending determination of compensation eligibility, and the right to restoration of sick leave credit upon determination of eligibility for compensation benefits.  See Jeannont v. N.H. Personnel Comm'n, 118 N.H. 597, 601 (1978) ("An employee's compensation is not necessarily limited to his salary, but will include any other benefits that are an integral part of the employee's contemplated compensation.");  see also Gilman v. County of Cheshire, 126 N.H. 445, 448 (1985) ("In New Hampshire, sick leave benefits, where authorized in the terms of employment, are considered an integral part of the public employee's contemplated compensation." (quotation omitted)).  Indeed, our holding in Stankiewicz is premised upon the absence of any

13

language in section 33.064(B)(2) (pre-2008 amendment) requiring the employee to reimburse the City prior to the reinstatement of the employee's sick leave credit. Stankiewicz, 156 N.H. at 593 ("nowhere in the ordinance does it require the employee to reimburse the City"); see also 6 E. McQuillin, The Law of Municipal Corporations § 20:48, at 250 (3d ed. rev. 2023) ("When interpreting a municipal ordinance, [a court] begins with the text, presumes that the legislative body used each word advisedly, and deems all omissions to be purposeful." (emphasis added)). This benefit, therefore, as it is "authorized in the terms of the employment, is not a mere gratuity, but constitutes compensation for services rendered. Such payment is in the nature of deferred compensation in lieu of wages earned." Gilman, 126 N.H. at 449.

[¶41] The trial court found, and neither party disputes, that the defendants became permanent employees prior to the 2008 amendment. Thus, once each defendant attained permanent employee status under the version of the MCO in effect prior to 2008, their accrued compensation benefits — including the benefit set forth in section 33.064(B)(2) (pre-2008 amendment) — vested. See id. ("Because [sick leave] benefits constitute a part of an employee's compensation, they form a part of the employment contract, and the right to receive such benefits vests at the time one becomes a governmental employee or continues in such employment."); see also Jeannont, 118 N.H. at 602.

[¶42] The defendants also point to section 10.17(B) of the MCO as evidence that any right an employee gained under the MCO "was to be unyielding even where the ordinance may be modified or repealed at a subsequent time." We agree. Section 10.17(B) provides:

> No suit, proceedings, right, fine, forfeiture, or penalty instituted, created, given, secured, or accrued under any ordinance previous to its repeal shall in any way be affected, released, or discharged, but may be prosecuted, enjoyed, and recovered as fully as if the ordinance had continued in force unless it is otherwise expressly provided.

Thus, as relevant here, section 10.17(B) evinces the City's intent to be contractually bound to allowing qualifying employees to "prosecute[], enjoy[], and recover[]" the right set forth in section 33.064(B)(2) (pre-2008 amendment) "as if the ordinance had continued in force," and informs that said right cannot be "affected, released, or discharged" by the City.

[¶43] The majority concludes "that [MCO] section 33.023 provides an exception to the general rule set forth in section 10.17(B) given that it expressly provides for amendment and modification of sections 33.020 through 33.082" and, therefore, section 33.064(B)(2) (pre-2008 amendment) does not create a vested right. We disagree with the majority's interpretation of section 33.023. That section provides that "[n]one of the provisions of §§ 33.020 through 33.082 of this chapter shall amend or modify any existing legal and binding

14

contract between the city and employees' groups unless or until such contracts are renegotiated to conform with the provisions of §§ 33.020 through 33.082 of this chapter."

[¶44] The majority's interpretation is at odds with the MCO's plain language and our prior interpretation of it. As we concluded in Stankiewicz, "section 33.023 is stated in the present tense," and thus "refers to those contracts existing at the time [section 33.023] was enacted and exempts such contracts from complying with the MCO until they are renegotiated." Stankiewicz, 156 N.H. at 590-91. That makes sense in the context of the MCO, since sections 33.020 through 33.082, which all pertain to various aspects of the City's employment relationship with its employees, id. at 590, were all enacted at the same time. Section 33.023 simply directs that sections 33.020 through 33.082 will not apply retroactively. Interpreting section 33.020, we thus concluded: "The City, despite its general authority to adopt ordinances for its governance, may not, however, simply alter or abandon valid contracts with its employees' groups by adopting new ordinances." Id. at 590.

[¶45] It is, to say the least, ironic that the very provision we have interpreted as preserving the sanctity of contract lies at the center of the majority's conclusion that the defendants' rights under section 33.064(B)(2) (pre-2008 amendment) are not protected. We respectfully disagree that the plain language of section 33.020, or its context, supports the majority's conclusion. For the foregoing reasons, we conclude that section 33.064(B)(2) (pre-2008 amendment) and section 10.17(B) of the MCO "evince[] the clear intent of the [City] to be bound to particular contractual obligations." Am. Fed'n of Teachers — N.H., 167 N.H. at 301 (quotation omitted).

II. Substantial Impairment of Vested Right

[¶46] Because we would hold that the City is contractually bound to provide the defendants with the right set forth in 33.064(B)(2) (pre-2008 amendment), we next consider whether section 33.064(B) (post-2008 amendment) impairs that contractual relationship and whether the impairment is substantial. See id. We conclude that the amended ordinance impairs the contractual relationship and that the impairment is substantial.

[¶47] Here, the parties do not dispute that, under section 33.064(B) (post-2008 amendment), the defendants would be required to repay all sick leave benefits that they received prior to the City restoring their sick leave credit; whereas, under section 33.064(B)(2) (pre-2008 amendment), the defendants would not be required to repay all sick leave benefits prior to the City restoring their sick leave credit. See Stankiewicz, 156 N.H. at 593. Thus, the amended version of 33.064(B) clearly impairs the contractual relationship between the City and the public employees by changing the nature of the benefit. See Gilman, 126 N.H. at 449 ("[T]he employer [c]ould not impair its

15

obligation to pay [sick leave] benefits by changing its sick leave policy after the compensation was earned so as to divest the rights of those already benefiting from it."). Moreover, this impairment is substantial because it restricts the defendants' ability to receive sick leave benefits, which, as noted above, "are an integral part of the employee's contemplated compensation." Jeannont, 118 N.H. at 601; see also Opinion of the Justices (Furlough), 135 N.H. at 634 ("The bill under consideration here impairs the very heart of an employment contract: the promise of certain work for certain income. Its impact would likely wreak havoc on the finances of many of the affected workers and can only be considered substantial."). Sick leave benefits "are a means by which the State can attract qualified persons to enter and remain in State employment, and an employee accepts an offer of employment or continues in employment with the State in reliance on the State's representations that it will provide such benefits." Jeannont, 118 N.H. at 601-02.

[¶48] The City argues that application of section 33.064(B) (post-2008 amendment) against the defendants is not unconstitutionally retroactive because each defendant was party to a CBA that adopted the post-2008 version of section 33.064(B) as the law of the contract. This argument, however, is premised on the assumption that the defendants do not have a vested right in section 33.064(B)(2) (pre-2008 amendment). Given that the benefit set forth in section 33.064(B)(2) (pre-2008 amendment) constitutes a vested right, such right cannot be abrogated by a CBA. See Fowler v. Town of Seabrook, 145 N.H. 536, 539-40 (2000) (holding that a CBA cannot negate rights granted by statute).

[¶49] We conclude that section 33.064(B) (post-2008 amendment) substantially impairs a contractual relationship when applied against the defendants.

III.    Public Purpose and Reasonable Necessity

[¶50] We next consider whether the "legislative enactment that constitutes a substantial impairment of a contractual relationship" has a "significant and legitimate public purpose." Deere & Co. v. State of N.H., 168 N.H. 460, 472 (2015). If a significant and legitimate public purpose is identified, the next inquiry:

> "is whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Unless the State itself is a contracting party, as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."

16

Id. (quoting Energy Reserves Group v. Kansas Power & Light, 459 U.S. 400, 412-13 (1983)). "In cases where the State is itself a party to the contract, heightened review is warranted and courts generally accord minimal deference to legislative acts affecting such contracts." Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 654 (2010). We have explained that:

> "[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all."

Id. at 655 (quoting Opinion of the Justices (Furlough), 135 N.H. at 635). Indeed, we have previously invalidated legislation as unconstitutional, id. at 656-58, because "'financial necessity, though superficially compelling, has never been sufficient of itself to permit states to abrogate contracts.'" Id. at 654 (quoting Lower Village Hydroelectric Assocs. v. City of Claremont, 147 N.H. 73, 78 (2001)).

[¶51] Here, the City is party to the contract, and thus, the heightened standard of review applies. See id. at 654. The City argues that the purpose of the amended ordinance, at least in part, is to prevent "double-dipping," which is achieved by requiring employees, prior to the restoration of their sick leave credit, to repay to the City all sick leave benefits that they received pending determination of workers' compensation eligibility.

[¶52] We do not agree with the City's suggestion that employees, like the defendants in this case, who receive sick leave benefits while they await resolution of their workers' compensation claims, and then receive workers' compensation awards without paying back the sick leave time, are "double-dipping." Sick leave benefits are distinct from workers' compensation benefits. "Payment for sick leave . . . constitutes compensation for services rendered." Gilman, 126 N.H. at 449. In contrast, New Hampshire's workers' compensation law is "remedial in nature, designed to substitute for unsatisfactory common law remedies in tort" when employees suffer "accidental injury or death arising out of and in the course of employment." Appeal of N.H. Dep't of Health and Human Servs., 145 N.H. 211, 213 (2000) (quotation omitted). It is anomalous that section 33.064(B) (post-2008 amendment) appears to equate the two benefits. Therefore, we conclude that section 33.064(B) (post-2008 amendment) does not have a significant and legitimate public purpose derived from preventing perceived "double-dipping" by officers who became permanent employees prior to its enactment.

[¶53] Even assuming that the City's stated purpose for the amended ordinance is significant and legitimate, we disagree that the means to achieve this purpose are reasonable and necessary when applied against the defendants here. As discussed above, the defendants possess a vested right in the benefit set forth in section 33.064(B)(2) (pre-2008 amendment), which allows for restoration of their sick leave credit once they are deemed eligible for workers' compensation benefits, without any repayment requirement. The City now attempts to prevent "double-dipping" by demanding that, pursuant to section 33.024(B) (post-2008 amendment), the defendants must first repay the sick leave benefits that they received while awaiting an eligibility determination prior to restoration of sick leave credit. It is neither reasonable nor necessary, however, for the City to prevent perceived "double-dipping" by infringing on the defendants' vested rights and demanding repayment of sick leave benefits when the justification for doing so is purely economic. See Opinion of the Justices (Furlough), 135 N.H. at 635 ("'When a State itself enters into a contract, it cannot simply walk away from its financial obligations.'" (quoting Energy Reserves Group, 459 U.S. at 412 n.14)); see also Tuttle, 159 N.H. at 656-58.

[¶54] Finally, the City argues that, in amending the ordinance, it was following our instructions in Stankiewicz. However, our directive in Stankiewicz — that the City was free to amend its ordinance if it disagreed with our interpretation — did not necessarily imply that any amendments would be retroactively applied. See Stankiewicz, 156 N.H. at 593-94; see also Gilman, 126 N.H. at 450 ("[T]his opinion should not be read to preclude employers from modifying the terms of employment. Rather, this opinion merely limits the ability of an employer to modify rights which have vested under the previous terms of employment.").

[¶55] For the reasons outlined above, we conclude that section 33.064(B) (post-2008 amendment) as applied to the defendants is unconstitutional. We would reverse both the trial court's grant of summary judgment in favor of the City and its denial of summary judgment for the defendants. Accordingly, we respectfully dissent.